## DE LA VERGNE REFRIGERATING MACH. CO. v. PALMETTO BREW-ING CO. et al.

### (Circuit Court, D. South Carolina. January 27, 1896.)

COURTS—JURISDICTION—COMITY—POSSESSION OF PROPERTY.

Certain minority stockholders of the P. Co. commenced a suit, in a state court, on December 30th, against the P. Co., its president, the S. Co. and the D. Co., mortgage creditors of the P. Co., in which they alleged that the president, controlling a majority of the stock, was mismanaging the affairs of the P. Co., and had by his mismanagement caused its insolvency, but that with proper management the company could be relieved from its embarrassment, and prayed that the P. Co. and its president be restrained from exercising any control over its property, that its creditors be enjoined from bringing suits, and for the appointment of a receiver. Upon this bill, a rule to show cause why a receiver should not be appointed, with an injunction against the defendants and the creditors of the P. Co., was issued, returnable January 13th. On January 6th the D. Co., one of the defendants in the suit in the state court, and holder of mortgages on the P. Co.'s real and personal property, but which, being a nonresident, had not been served, commenced a suit in the United States circuit court against the P. Co., for the foreclosure of its mortgages, making the necessary allegations to entitle it to a foreclosure of the mortgages and the appointment of a receiver, and thereupon applied for the appointment of a receiver. A receiver was appointed by the circuit court and took possession of the property. On the return of the rule in the state court, on January 13th, that court appointed a receiver in the stockholders' suit, who then, on January 17th, intervened in the suit in the federal court, and asked to have the possession of the P. Co.'s property turned over to him by the receiver of the federal court. *Held* that, as the controversies in the two suits were entirely distinct, and the relief sought antagonistic, the stockholders in the one seeking to keep the P. Co. a going concern and prevent the enforcement of the claims of creditors, and the mortgagee in the other suit seeking to enforce its lien, as the complainant in the federal court could not obtain the relief to which it was entitled, in the stockholders' suit, without appearing therein and becoming an actor, and as the federal court's receiver was in actual possession before the appointment of the state court's receiver, the former would not be directed to surrender possession to the latter.

This was a suit by the De La Vergne Refrigerating Machine Company against the Palmetto Brewing Company and others, for the foreclosure of a mortgage. A. F. C. Cramer was appointed receiver, and took possession of the property of the Palmetto Brewing Com-

pany. August Bequest intervenes, praying for the delivery to him, as receiver appointed by a court of the state of South Carolina, of the property in the hands of the receiver of this court.

Mordecai & Gadsden, for petitioner.

J. N. Nathans, James Simons, Mitchell & Smith, and Huger Sinkler, for respondents.

SIMONTON, Circuit Judge. On the 6th of January, 1896, the complainant, alleging that it is a creditor of the Palmetto Brewing Company, secured by mortgage of real estate of said company, and also by chattel mortgage, filed a bill in this court, in behalf of itself and all other creditors of the Palmetto Brewing Company, against the Palmetto Brewing Company, a body corporate under the laws of the state of South Carolina, making parties codefendant the Security Savings Bank, another corporation of the state of South Carolina, a mortgage creditor, and the Consumers' Coal Company, also a South Carolina corporation, a general creditor of the brewing company. The bill, after alleging that the complainant is a citizen of the state of New York and the defendants all citizens of the state of South Carolina, and alleging the nature and character of its claim against the brewing company, charges that the said company is wholly insolvent and unable to meet its liabilities; that, in addition to this, certain of the stockholders are having serious differences with the directors of the company, which have a disastrous effect upon the affairs of the company. It prays a foreclosure of its mortgages, marshaling of the assets, and a distribution of their proceeds among all the creditors. It also prays the appointment of a receiver. The bill being thus filed by a citizen of the state of New York against citizens of the state of South Carolina, the complainant setting up mortgages of realty and of personalty, the insolvency of its debtor being averred, and dissensions between the stockholders alleged, tending to show that this condition of insolvency would continue and the assets of the corporation be exposed to deterioration, and the rights of creditors disregarded, the jurisdiction of the court was unquestionable, and the complainant established its right to the appointment of a receiver. Kountze v. Hotel Co., 107 U. S. 378, 2 Sup. Ct. 911 (Bradley, J.). Hearing the bill and affidavits attached, this court appointed A. F. C. Cramer temporary receiver of the property of the Palmetto Brewing Company, and under its order the said receiver took peaceable possession of the property out of the hands of the brewing company, in whose possession he found it, and now holds the same.

On the 17th of January, 1896, the petitioner, A. Bequest, intervened in the said suit and filed his petition therein. In his petition he shows that he was appointed receiver of the Palmetto Brewing Company by an order of Hon. W. C. Benet, judge of the First judicial circuit of South Carolina, and presiding judge of said circuit, bearing date the 13th of January, 1896, entered in a cause entitled "Theodore Wenzel and John W. Burmester, Plaintiffs, against the Palmetto Brewing Company, J. E. Doscher, Security Savings Bank, a Body

Corporate under the Laws of the State of South Carolina, and the De La Vergne Refrigerating Machine Company, a Body Corporate under the Laws of the State of New York." Pending the said action, the proceedings in this court heretofore spoken of were had, and that in the cause in the state court his honor, the presiding judge, had issued an order enjoining the defendants and creditors of the Palmetto Brewing Company, and also a rule to show cause, on a day fixed by him, why a receiver should not be appointed for the Palmetto Brewing Company. The proceedings in the state court began 30th December, 1895. This order of Judge Benet bears date the 31st of December, 1895. The petitioner further states that, at the return of the rule, January 13, 1896, he had been appointed by Judge Benet receiver of the brewing company, and that he had demanded possession of the property, plant, and assets of the Palmetto Brewing Company, in the possession and control of A. F. C. Cramer, the receiver of this court, which demand was refused. The prayer of the petitioner is that his petition may be ordered filed in this cause, and that the said A. F. C. Cramer and the parties to the bill of complaint in this court be required to show cause, before this court, why the order appointing A. F. C. Cramer as receiver by this court should not be rescinded and made of none effect, and why the petitioner, as the lawful receiver of the Palmetto Brewing Company, should not obtain and retain possession of all and singular its property, plant, and assets. Upon the filing of the petition a rule was issued, directed to the parties in the bill of complaint in this case, to show cause why the prayer of the petition should not be granted. The complainant, being a nonresident of the state, substituted service of the order was made on J. N. Nathans, its solicitor. These parties have all answered the rule.

With regard to the right of the state court to entertain the cause filed therein to recognize the right of the plaintiffs, minority stockholders, to bring their action, and with regard to the validity of the action and orders of his honor, Judge Benet, therein, this court can make no question. These were the acts of a court of co-ordinate jurisdiction with this upon a matter within its jurisdiction, and this court has not the right to sit in review over the propriety and validity of this action. Any errors which may have been committed, if, indeed, there were errors,—and on this point this court has no right to an opinion,—can be corrected in the court of last resort to which he is responsible. They cannot be examined in this court. We must treat the case, therefore, as the request of the receiver, bearing the credentials of the state court, which this court cannot gainsay or question. What this court has to decide is this: It having been brought to its attention that certain proceedings were instituted in the state court prior to any action by this court, which proceedings have culminated in the appointment of a receiver for the Palmetto Brewing Company, subsequent to the appointment of a receiver by this court, will this court now reverse its action, dispossess its receiver of the custody and control of the property, plant, and assets of the Palmetto Brewing Company, and order him to turn over his possession to the petitioner as receiver of the state court?

It is the established law of this circuit that, when proceedings have been begun in the state court, and other proceedings are subsequently commenced in this court, if the proceedings in each court present the same controversy, seek the same relief, and are substantially between the same parties, this court will arrest its action, hold its hand, and suspend proceedings, not as a matter of right, but in the exercise of that comity which should exist between two courts established by distinct sovereignties and exercising jurisdiction within the same territory. Howlett v. Improvement Co., 56 Fed. 161; State Trust Co. of New York v. National Land Imp. & Manuf'g Co. (June 30, 1893) 72 Fed. 575. If this condition of things exists in this case the same rule will be observed. · This necessitates an examination of the proceedings in the state court, to ascertain the character of the controversy and of the parties, and the scope and purpose of the complaint filed therein.

These proceedings were instituted by two minority stockholders of the Palmetto Brewing Company against the company itself, J. H. Doscher, president or manager of the said company, the Security Savings Bank, and the De La Vergne Refrigerating Machine Company. After stating the corporate character of the brewing company, and that it was engaged in selling beer and other malt liquors, the purpose for which it was chartered, and that they are owners of certain shares of the capital stock of the company, the plaintiffs charge that the majority of the stock is owned or controlled by the said Doscher and his relatives and friends, and that so he is the president of the company. It further charges that, under what is known as the "Dispensary Law" of this state, the said brewing company has been licensed to manufacture and sell beer under the conditions prescribed in the act, a license subject to revocation at any time, in case the officers and directors of the company fail to comply with these conditions and the regulations of the board of control. That Doscher has frequently violated these conditions and regulations in certain particulars, charged in the complaint, by reason whereof the license of the company for the sale of beer is liable to be revoked, resulting in a total loss of the enterprise, and irremediable damage to the stockholders. They further allege that the stockholders can procure no redress from the management of the company, because the same is entirely in the hands of Doscher, under whose express directions and for whose profit the unlawful acts have been committed. They then charge loss of property by the corporation, through the negligence of the directors, and a very serious loss in the goods manufactured by the company through one Richter at Wilmington, N. C., who has abused his powers and duties as agent of the company; that by the action of the directors and its president the credit of the company has been seriously impaired, so that it is insolvent and unable to meet its ordinary obligations as they mature,—the loss of credit resulting in putting a large part of the floating debt of the company in the hands of Doscher; that the stock of the company has depreciated from $75 to $25 a share; that this mismanagement of the company in the interest of Doscher and the majority of the stockholders was a positive loss to the other stockholders. The plaintiffs

then allege, that, if the affairs of the company were conducted on a business basis, and for the interests of all the stockholders alike, it could be relieved from its present embarrassment, but that the present officers of the company have shown themselves utterly unfit to manage the property. Then, after stating the fact of the existence of the bond and mortgage due to the De La Vergne Refrigerating Machine Company, securing $10,000 of principal, no part of which they say is paid, and also the fact of the bond to the Security Savings Bank, with the mortgage securing the same, for an amount of $25,000, no part of which, also, has been paid, but asking or suggesting no course as to them, they add that, unless relieved by this honorable court, the plaintiffs and all other minority stockholders of the said company are utterly powerless in the premises. The complaint concludes with a prayer—First, that the Palmetto Brewing Company be restrained and enjoined from the exercise of any control whatever over the property, plant, and franchises; second, that Doscher be restrained and enjoined from interfering in any manner whatsoever with any of the property of the company; third, that the creditors of the Palmetto Brewing Company be enjoined from prosecuting any actions against the company except in these proceedings, and that a receiver be appointed for the Palmetto Brewing Company, with a prayer for general relief. The order passed by his honor, Judge Benet, upon hearing this complaint, grants the prayer contained in it.

It thus appears that the whole scope and purpose of the complaint is to secure to minority stockholders proper representation in the management of the company and the protection of their rights. To this end they seek to prevent any further violation of the conditions and regulations under which the brewery was made a part of the dispensary, and thus preserve the valuable privilege to the company. It declares that, under proper management, the company can be relieved from its embarrassment, notwithstanding its present condition of insolvency. Although it mentions the fact that there are creditors of the company, two of them lien creditors, it seeks no relief whatever as to them, and evidently contemplates that they should be provided for in the due course of business of the company, when the objectionable manager is removed and the affairs of the company put on a business basis. In other words, the object which the plaintiffs had in view was the keeping of their company a going concern, for the benefit of the stockholders of the company. It is true that, incidentally, the creditors of the company might ultimately be benefited, but the purpose of the complaint is not to satisfy these liens, but to promote and protect and secure the interests of stockholders. The apparent motive in asking an injunction against creditors was to compel them to stay their hands until the company could be reorganized, its unfaithful officers removed, and its affairs placed upon a successful business basis. On the other hand, the proceeding in this court looks to the winding up of the company, marshaling its assets, and paying its creditors, the general creditors as well as the lien creditors. Its statements in one respect concur with the statements of the complaint; that is, as to

the utter insolvency of the company. Because of this insolvency, the complainant in this court seeks to establish its rights secured to it by its mortgages and to enforce them. To this end it has invited the co-operation of all creditors, and asks that provision be made for them. Every class is represented, and the relief prayed for would be complete to the lien creditors, to the unsecured creditors, and to all the stockholders of the corporation who are represented in these proceedings by the company. The prayer of the complainant is not addressed to the discretion of the court, but it comes with mortgages in its hands, giving it certain rights, by contract, paramount to all other rights, and asks that they be enforced. The stockholders in the proceedings in the state court held their rights in subordination to and inferior to the rights of the creditors. They cannot exercise any right of property in the assets of the corporation, after creditors seek to enforce liens, until the value and extent of those liens have been ascertained and the liens discharged. They seek a change in the management of the company, and the protection, in the future, of their rights, which have been grossly violated. They ask this in order that their shares, which the misconduct of the present management has made valueless by driving the company into insolvency, may be rehabilitated, and be given value by more careful, economical, and business methods. The proceedings in this court look to the destruction of the corporation and the liquidation of its debts, under the averment that its liabilities exceed its assets. We take the case made in the state court. What relief do they give the complainant in this case? It holds two mortgages on property of the Palmetto Brewing Company securing bonds. The property with which the complainant is concerned is the property of the brewing company; that is, its interest, subject to the liens of the present complainant. It does not offer to redeem these liens. It does not and cannot pray the foreclosure of them. It cannot ask that the property be sold without the express assent of the lienholder, or without changing and amending the whole scope and purpose and prayer of the complaint, and serving complainant anew with process, making, in fact, a case wholly new. In the meantime it seeks to enjoin the complainant from any assertion of its rights, an injunction which would become operative upon it as soon as it came in and submitted to the jurisdiction. In other words, the present proceedings in the state court would afford no relief whatever to the complainant, certainly none of the relief it asks at the hands of this court, without an appearance and answer in the state court, followed up by some action on its part, making it an active moving party, seeking by its own proceeding affirmative relief. Without discussing, therefore, the character of the parties to the two proceedings, it is manifest that the controversies they present are entirely distinct, and the relief sought in the one, not only different from, but wholly antagonistic to, the relief sought in the other.

The counsel who argued this case with equal ability and earnestness have treated it as threatening a conflict of jurisdiction. But, as has been said, it is a question of comity. The jurisdiction of the

court over the controversy made here is unquestionable. The jurisdiction of the state court over the controversy made there cannot be disputed. The receiver of this court is in actual peaceable possession. The receiver of the state court was appointed subsequent to his appointment, in proceedings antedating those in this court. "The decisive test, as expressed by the weight of authority, is that, when the controversy in both actions is the same, the court first acquiring jurisdiction of the controversy will retain it; and it is not necessary that it should take actual possession through its receiver of the property to obtain exclusive jurisdiction. If, however, the controversy is not the same, there is no conflict of jurisdiction as to the question or cause, and the court which first acquires jurisdiction over the property, by actual seizure through its receiver, will enforce that jurisdiction, and assume the actual possession to which it gives the right; and until the property is seized, no matter when the suit was commenced, the court does not have jurisdiction over the property, and another court of concurrent jurisdiction may appoint a receiver, and through him take possession of the property." Gluck & B. Rec. pp. 67, 68; Andrews v. Smith, 5 Fed. 833; Compton v. Jesup, 15 C. C. A. 397, 68 Fed. 263. In view, therefore, of the fact that the controversy in the suit in this court is entirely distinct from that in the state court, and that the scope and purpose of the proceedings in the state court are not those of the proceedings in this court, connected with the fact that the receiver heretofore appointed in the main cause is in actual, peaceable possession of the property, and that the complainant holds a legal lien on the property, entitling it to its possession through a receiver, the mortgagor being insolvent, and that this court has been asked by it not to exercise an act of discretion, but to give effect to a right secured to it by the constitution and laws of the United States, the prayer of the petition cannot be granted, and it is so ordered.

But the petition, with its exhibits, discloses that the minority stockholders have reasons, satisfactory to them, to distrust the parties controlling the corporation, and, therefore, that the corporation will not properly represent their interests. It is therefore ordered that the petitioner, or any person representing the minority stockholders, may, if they be so advised, become parties to these proceedings, to take such course therein as may seem best for the interest which concerns them and may represent them.