## SCHULTZ et al. v. HIGHLAND GOLD MINES CO. et al.

(Circuit Court, D. Oregon. December 26, 1907.)

No. 3,116.

1. COURTS—FEDERAL COURTS—JURISDICTION—JUDGMENT IN STATE COURT—INJUNCTION.

A federal court, though without power to vacate a judgment entered in a state court, under Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], prohibiting a federal court from nullifying or staying proceedings in a state court, has power by injunction to restrain the holder of the judgment from enforcing it, as such process operates on the person, and not against the state officers or authorities.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1418–1430; vol. 27, Injunction, § 72.

Federal courts restraining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

2. QUIETING TITLE—CLOUD ON TITLE—REMOVAL — JURISDICTION — FEDERAL COURTS.

The jurisdiction of a federal court to restrain the enforcement of a judgment of a state court is not effective to remove a cloud from the title to realty cast by reason of the judgment, which would still remain, notwithstanding the owner is not permitted to enforce it.

3. SAME—PLEADING—BILL.

A bill to restrain enforcement of a judgment is not sustainable as a bill to remove a cloud from the title to realty, where the realty alleged to have been clouded is not described, and the bill does not proceed on the theory of the removal of an incumbrance.

4. PROCESS—SERVICE BY PUBLICATION—NONRESIDENTS.

Where a minority stockholders' bill sought the appointment of a receiver for the corporation, with authority to appear in an action in a state court, and there obtain relief against a judgment rendered against the corporation with an injunction against further interference with the corporation's property, and an accounting as to certain stock alleged to have been pledged for the indemnity of the corporation, the suit was not local in character, warranting service on defendants, not citizens of the state, by publication.

5. COURTS—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

Where a minority stockholders' bill was brought by citizens of three states against citizens of two other states, in a state where part of the defendants resided, but was not local in character, jurisdiction on the ground of diversity of citizenship attached as to all the complainants and as to all the defendants who were citizens of the state in which the suit was instituted, but not as to the defendants who were citizens of another state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 855.

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

6. SAME—DISTRICT IN WHICH SUIT TO BE BROUGHT.

Act March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], authorizes the bringing of suit in the district of the residence of either the plaintiff or defendant, where federal jurisdiction is founded on diversity of citizenship alone.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 811.]

158 F.—22

7. SAME—COMBINATION OF PLAINTIFFS.

Where federal jurisdiction rests on diversity of citizenship, it is no objection that citizens of different states other than the state in which the suit is instituted are combined as co-complainants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 855.]

8. SAME—JOINDER OF DEFENDANTS.

Where, in a suit not local in character, in which federal jurisdiction depends on diversity of citizenship, citizens of other states than that in which the suit is instituted are joined as defendants, such joinder is not a jurisdictional defect, and may be waived by the defendants erroneously joined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 855.]

9. CORPORATIONS—MINORITY STOCKHOLDERS—BILL—RIGHT TO RELIEF.

A bill by minority stockholders of a mining company alleged that, after sale of the corporation's property under a creditor's judgment, the corporation's attorney secured a judgment against it on certain alleged false and fraudulent claims, some of which had been assigned to him by the officers of the company, and had redeemed the property from the purchaser under the prior judgment; that the corporation had executed a mortgage on its property to secure the debt of S., who had transferred stock of the corporation to indemnify it from its liability on such mortgage, the proceeds of which stock certain of the defendants, who had been officers of the company, had appropriated to their own use. The bill prayed for the appointment of a receiver to vacate the judgment in the state court in favor of the corporation's attorney, and to restrain the defendants from further interfering with the corporation's property or disposing of such capital stock, and for an accounting. *Held*, that the bill was sufficient, under equity rule 94, providing for suits for the benefit of stockholders, etc.

## In Equity.

This is a suit by minority stockholders of the Highland Gold Mines Company (the complainant, Schultz, being a citizen and inhabitant of the state of Washington, Mrs. Marion B. Cleveland a citizen of California, and the remaining complainants citizens of North Dakota) against the Highland Gold Mines Company and others. The defendant mines company and defendants Neil J. Sorenson, Robert McGaughey, and Thomas H. Crawford are citizens of the state of Oregon, the remaining defendants, Edgar B. Diehl and Daniel Grabill, citizens of the state of Pennsylvania. The bill of complaint shows that prior to January 14, 1907, Diehl, Sorenson, and one J. Frank Shelton were the directors of the mines company, and since said date Diehl, McGaughey, and Grabill have been, and now are, such directors. Sorenson was the president while director, Diehl the vice president, and McGaughey the secretary and treasurer; no election of officers by the board having been had subsequent to January 14, 1907. The purpose for which the mines company was incorporated and organized was to engage in the business of mining, and it has acquired eight unpatented lode claims, situated in Baker county, Ore. (the same being not otherwise more specifically described), together with a mill and appurtenances and other improvements alleged to be of large value. Prior to February, 1906, the company became largely involved in debt, and on or about September 1, 1906, the Haines Mercantile Company recovered a judgment against it for the sum of $5,500, causing execution to issue and the property of the mines company to be sold at sheriff's sale, at which sale one Baer became the purchaser. Further than this, one Dunphy obtained a judgment for $600, and one Hobson for $300. The bill of complaint thereupon sets up in brief that the defendant Thomas H. Crawford has been the regularly employed counsel and attorney for the mines company since January 1, 1903; that on November 8, 1906, he, together with Diehl, Grabill, McGaughey, and Sorenson, entered into a fraudulent agreement and conspiracy, whereby it was mutually agreed that Diehl and Grabill would pretend and assert that the company was indebted to them in the sum of $10,000; that Crawford would pretend and assert that the company was also indebted to him for legal services in the sum of $10,000; that, having procured a pretended as-

signment to him of the simulated claim of Diehl and Grabill, Crawford instituted an action in the circuit court of the state of Oregon for Baker county against the mines company for the sum of $20,000, and that, the directors and officers of said company being parties to the said conspiracy and making no bona fide defense, judgment was in course of time obtained and entered in favor of Crawford and against the company for said sum, all in pursuance of said fraudulent agreement and conspiracy; that said judgment was thereupon docketed, and that on January 19, 1907, Crawford, as such pretended judgment creditor, redeemed the property from the sale to Baer. It is further alleged that the complainant, Schultz, was present during the pendency of said action, and importuned Diehl and McGaughey, two of the directors of the company, to make a defense thereto, and that they neglected and failed to do so, but, on the contrary, aided and assisted the defendant Crawford in procuring said judgment; that the company at no time was indebted to Diehl and Grabill, or to Crawford, in any sum whatever, but that said pretended claims were wholly fabricated and without any real existence; that the said officers and directors of the said mines company have wholly abandoned their duties and trust towards such company, and that they, in pursuance of said conspiracy to defraud the company, are intending to allow and permit said property to remain in the hands and possession of said Crawford without redemption from his purchase, and thus to permit him to secure title to such property in fraud of the company and its stockholders. It is further averred that Sorenson was in April, 1905, indebted to one Knapp in the sum of $35,-500; that the defendants Diehl, Grabill, and McGaughey, through the advice and counsel of the defendant Crawford, fraudulently executed and delivered to Knapp the mortgage of the mines company upon its property as pretended security for the payment of such claim and demand of Sorenson; that suit was subsequently instituted by Knapp against the mines company for foreclosure of such mortgage, and is now pending, and that the defendant Crawford, as counsel, is defending against said suit, but at the sole instance and request of Sorenson, and for which services the mines company is not obligated in any respect to Crawford; that, for the purpose of indemnifying and saving harmless the said mines company against the payment of said mortgage, Sorenson delivered to defendants Diehl and Crawford 1,000,000 shares of the capital stock of the company then held and owned by him, the entire capital stock consisting of 3,000,000 shares; that the said defendants, other than the mines company, have fraudulently disposed of about 250,000 shares of such capital stock so held in trust for the indemnity of the said mines company, and have out of the proceeds of such sales wrongfully paid to Diehl all of the money claimed by him to be due from said company, and have paid to Crawford $6,000 upon his pretended claim against Sorenson for services rendered him in the Knapp foreclosure proceeding, and other sums claimed against the company by Grabill and McGaughey, and have otherwise appropriated the proceeds of said 250,000 shares of stock to their own use and benefit; that the full amount of the proceeds of said stock so received by said defendants the complainants are unable to state without an accounting on the part of defendants; and that said defendants are endeavoring to sell and dispose of other of the shares of said stock, and thereby to appropriate the same to their own use. A decree is sought appointing a receiver, so that he might enter an appearance in the Crawford case in the state court, and file a motion to vacate the judgment rendered therein, and make any proper defense to said cause that might seem necessary to defeat the same; also, enjoining the defendants from further interfering with the property of the mines company, or disposing of any more of the said 1,000,000 shares of the capital stock of such company, and requiring an accounting as to the latter, and declaring fraudulent and void the said judgment had and received in the state court in favor of Crawford and against the Mines Company for the said sum of $20,000. The defendants appeared, first, specially by motion to dismiss the bill of complaint, for the reason that the court was without jurisdiction of the cause or of the parties thereto. This motion was denied April 6, 1907. Subsequently the defendants Crawford and McGaughey demurred to the bill, assigning as grounds therefor, first, that the plaintiffs have no legal capacity to sue; and, second, that the bill does not state facts sufficient to constitute a cause of action.

Douglas W. Bailey, for plaintiffs.
Butcher, Clifford & Correll, for defendants.

WOLVERTON, District Judge (after stating the facts as above). The present hearing is upon the demurrer to the bill, and, upon looking further into the cause of suit as exhibited by such bill, I am now of the opinion that the motion was improperly denied, in so far as it pertained to the defendants Diehl and Grabill, who are shown to be citizens of the state of Pennsylvania. I then entertained the view that the suit was one for the removal of cloud from title, and hence local in its nature, which would give jurisdiction to bring in parties not citizens of the state where the suit was instituted by publication, but it cannot be so maintained. True, the prayer of the bill is for a vacation of the judgment made and entered in the state court, but this court is without power or authority to make such an order, because that would be in effect to nullify and stay the proceedings of a state court, in violation of the provisions of section 720, Rev. St. (page 581, U. S. Comp. St. 1901). It may, however, through the injunctive process, restrain the plaintiff in a judgment from enforcing the same, and thereby prevent perpetration of a wrong upon the judgment debtor, for in such case the process operates upon the person, and not against the state officers, or any authorities thereof. National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, 61 L. R. A. 394. See, also, Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630, and Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62, 35 L. Ed. 870. But such action of the court is not effective to remove a cloud from title to realty cast by reason of the judgment, for the judgment still remains, although the plaintiff will not be permitted to enforce it. Back of this, however, the bill of complaint does not state a cause for such relief. It nowhere describes the realty clouded, nor does it proceed in theory for the removal of any incumbrance. Two purposes stand paramount: One to obtain the appointment of a receiver, with authority to appear in the action in the state court and there obtain relief against the judgment, with injunction against further interference with the mining property; and the other to secure an accounting as to the stock alleged to have been pledged by Sorenson for the indemnity of the company. All other matters of averment are merely subordinate, so that the suit cannot be held to be local in character, warranting service on defendants not citizens of the state by publication.

It was contended at the hearing of the motion that there was not proper diversity of citizenship upon which to sustain jurisdiction. Citizens of three states have combined in a suit against citizens of two states, and the suit has been instituted in one of the latter states. I am of the opinion that jurisdiction attached as it respects all the complainants, and all the defendants who are citizens of the state of Oregon, wherein suit was instituted, but not as it respects the defendants who are citizens of another state. Under the statute of March 3, 1887 (24 Stat. 552, c. 373), as amended by the act of August 13, 1888 (25 Stat. 433, c. 866 [U. S. Comp. St. 1901, p. 508]), where the suit is founded upon diversity of citizenship only, it may be brought in

the district of the residence of either the plaintiff or the defendant. McCormick Harvesting Machine Co. v. Walthers, 134 U. S. 41, 10 Sup. Ct. 485, 33 L. Ed. 833. It seems to me that it can be no objection that citizens of different states, other than the state in which the suit was instituted, have combined as co-complainants in the suit. But, unless the suit is local in its nature—that is, brought for removing a cloud or incumbrance, or the like—there may be valid objection interposed to combining as defendants parties other than citizens of the state in which the suit is instituted. The case of Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635, is relied upon as opposed to the first proposition, and as authority against the maintenance of this suit while citizens of two or more states, other than the state in which the suit is instituted, remain combined as co-complainants. I do not so read it, however. Mr. Chief Justice Fuller, in his opinion rendered in the case of McCormick v. Walthers, supra, has this to say:

"We held [referring to the case of Smith v. Lyon] that where there were two plaintiffs, citizens of different states, the defendant, being a citizen of another state, could not be sued in the state of either of the plaintiffs."

If the suit had been laid in the state of the citizenship of the defendant it is very probable from this statement of the eminent chief justice that the ruling would have been different. The exact question, however, has been resolved in the case of Jackson & Sharp Co. v. Burlington & L. R. Co. (C. C.) 29 Fed. 474, wherein it was held proper that citizens of other states than the one in which suit was laid should be brought in as parties complainant, but that citizens of the state wherein the suit was instituted could not be properly so made parties complainant. This was a case local in its nature, it is true, but that circumstance does not alter the essentiality of a diversity of citizenship in order to confer jurisdiction. As to the latter proposition, that citizens of other states than those of the state wherein suit is instituted in causes not local should not be joined as defendants, the authorities seem to concur in its support. But the joinder is not jurisdictional, unless the noninhabitant shall see fit to make it so. He may waive the question of his being thus sued, and, if he does, the court has competent authority to proceed against him. Smith v. Atchison, T. & S. F. R. Co. (C. C.) 64 Fed. 1.

This brings us to a consideration of whether the bill states facts sufficient to constitute a cause of suit. Without going into the subject in detail, or at length, it is sufficient to say that I am impressed, after a careful study of the bill, that it conforms in substance and effect to the requirements of equity rule 94, relating to suits instituted by stockholders in a corporation. This rule is evidently the outgrowth of the doctrine established by the Supreme Court of the United States in the case of Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, and the bill is supported by that case also. This, however, as it relates to the bill, in so far as it sets up fraudulent transactions of the directors and officers of the mines company. The right of accounting must depend entirely upon whether the Sorenson stock was pledged for the indemnity of the mines company against its liability upon the Knapp mortgage. If the mortgage is held to be invalid as against the com-

pany, then there could be no basis for the accounting, because the stock is alleged to be the individual property of Sorenson. But, however that may be, the allegations of the bill must be taken as true when challenged by demurrer.

The demurrer will therefore be overruled, and such will be the order of the court.