KNUDSEN et al. v. FIRST TRUST & SAVINGS BANK et al.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917.)

No. 2878.

1. COURTS ⟨⟩493(1)—JURISDICTION—CONCURRENT JURISDICTION.

Where the controversy is the same in actions pending in courts of concurrent jurisdiction and the parties are the same, ordinarily that court first acquiring jurisdiction will retain it to the exclusion of the other, though possession of the res is not taken through a receiver or otherwise.

2. COURTS ⟨⟩493(3)—JURISDICTION—FEDERAL COURTS.

Pendency of an action in a state court is no bar to proceedings concerning the same matter in a federal court having jurisdiction.

3. COURTS ⟨⟩493(3)—JURISDICTION—FEDERAL COURT.

Appellants, who purchased land from an irrigation company, filed in the state court an action wherein it was alleged that the irrigation company was the owner of large quantities of land; that as an inducement to purchasers it represented to appellants and others that an irrigation system was to be formed; that water would be supplied and the rights maintained in perpetuity for an annual payment; that it collected the payment, but had not been paying the water charge for a large acreage; that it dissipated the funds arising from such payment, so that there was an immediate demand for the expenditure of a large sum of money

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the restoration of the system; and that therefore appellants and other purchasers had a first and prior lien on all of the assets of the company. Subsequently the company filed a voluntary petition in bankruptcy, and a trustee was appointed. Thereafter respondents filed a bill in the federal court to foreclose a trust deed given by the irrigation company, and a receiver was appointed. *Held*, that as the federal court first acquired possession of the irrigation company's property, it would, even though the state court had co-ordinate jurisdiction and appellants' suit therein was the first filed, retain jurisdiction.

4. COURTS ⬅⮕493(3)—JURISDICTION—FEDERAL COURT.

As the issues in the two suits were different, that one in the federal court being the foreclosure of a trust deed, while the one in the state court was evidently designed for the maintenance of the irrigation company as a going concern and to require some sort of a readjustment so that purchasers of land might reap the benefits of their purchase, the federal court will retain jurisdiction, despite the prior institution of proceedings in the state court.

Appeal from the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

Suit by the First Trust & Savings Bank and another, trustees, against the Bitter Root Valley Irrigation Company and Hans B. Knudsen and another. From an order sustaining plaintiffs' motion to strike a defense (237 Fed. 733), the last-named defendants appeal. Affirmed.

The appellees, who were the complainants below, on April 8, 1916, instituted a suit to foreclose a trust deed given by the Bitter Root Valley Irrigation Company upon its property, both then held and subsequently to be acquired, to secure the payment of a large amount of bonds.

The defendants and appellants here, Hans B. Knudsen and Caroline Knudsen, appearing made answer to the bill, in effect, that on June 24, 1915, they commenced an action in the District Court for the Fourth Judicial District of the state of Montana, county of Ravalli, against the Bitter Root Valley Irrigation Company, the First Trust and Savings Bank, and other persons and corporations interested in the affairs and property of the irrigation company, wherein it was alleged in effect that the irrigation company was the owner of large quantities of real property; that it had assumed the construction and operation of an irrigation district, comprising such real property; that as an inducement to purchase such lands from the company it had represented to plaintiffs therein and others that an irrigation system of 40,000 acres was to be formed, and that water therefor would be supplied and the rights therein maintained in perpetuity for the sum of $1.25 per acre, payable annually; and that, to the accomplishment of that end, it proposed to assess the irrigable lands the sum of $1.25 per acre, the money to be so realized to be used only for the upkeep of the system; and wherein it was further alleged that the irrigation company had contracted for the sale of 22,000 acres of said lands to a large number of persons and had been collecting from such purchasers for a number of years $1.25 per acre, but had not been paying the water charge for a large acreage that the company itself had been using and cultivating, nor had it been paying the water charge as it pertained to the unsold lands; that the said irrigation company had squandered and dissipated the funds arising from the $1.25 assessment, had failed to acquire water rights sufficient for the performance of its covenants to the purchasers, and had failed to maintain the system in proper condition for the service contemplated, and that, by reason thereof, there was an immediate demand for the expenditure of large sums of money for the restoration of the system, and for completing the same as originally contemplated by the scheme; that it was further alleged in said action that the irrigation company was insolvent, and unable to pay its obligations or to make needed repairs, or to complete the system, or to

replenish the wasted and squandered funds, "which constituted a trust fund for the maintenance and upkeep of said system"; that it did not intend to carry out or perform further any of its covenants and obligations; that the plaintiff in said action, and others similarly situated, "had by virtue of the premises and by operation of law and equity a first and prior lien and claim upon all of the assets of every kind, character, and description of the Bitter Root Valley Irrigation Company," and that the lien created by the deed of trust of the bank and Boisot, trustee, is inferior in point of time and right to the lien claimed by the plaintiffs in said action; that it was alleged that it was necessary that said irrigation system be completed as contemplated, and that, to that end and to secure the enforcement of the lien claimed by the plaintiffs thereon, it was requisite that a receiver of the properties and assets of the company be appointed, and that receiver's certificates be issued, and that the assets of the company be marshaled and placed in the custody of the court for the purpose of completing the irrigation system. And it was further alleged by the answer that it appears from the complaint filed in that action that "it is probable or possible that at some stage of the litigation therein the appointment of a receiver will be necessary to accomplish the execution of the judgment and decree of said state court, and that the receiver so to be appointed must be one of the selection of said state court and subject alone to its jurisdiction;" that on January 3, 1916, the irrigation company filed its voluntary petition in bankruptcy, and on February 23 F. C. Webster was appointed trustee.

This same trustee in bankruptcy was appointed receiver by the District Court of the United States on the filing of the bill to foreclose complainants' deed of trust. The possession of the property went into the hands of the trustee, and is now held by the receiver.

The prayer of the answer was that the federal court proceed no further, but permit the suit pending therein to remain in statu quo, or that it proceed so far only as to determine the rights of the complainants against the irrigation company, but not with reference to any of the claimed rights of the answering defendants, and that the trustee in bankruptcy be required to enter an appearance in the suit in the state court.

A motion was interposed to strike the affirmative answer. This was allowed, and the defendants appeal.

R. F. Gaines, of Butte, Mont., D. S. Wegg, of Chicago, Ill., and Geo. T. Baggs, of Stevensville, Mont., for appellants.

Winston, Payne, Strawn & Shaw, of Chicago, Ill., and Henry C. Stiff, of Missoula, Mont. (Silas H. Strawn, Garrard B. Winston, and R. S. Tuthill, Jr., all of Chicago, Ill., of counsel), for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The central question presented by this appeal is whether, by the rules of law relating to conflicting jurisdiction of courts or by reason of the comity existing between the federal and state courts, the District Court of the United States ought to entertain and maintain jurisdiction through its receiver of the res, which is the property subject to the trust deed of complainants.

[1] Where the controversy is the same in actions pending in courts of concurrent jurisdiction, and the parties are the same, the general rule, supported by the weight of authority, seems to be that the court first acquiring jurisdiction of the controversy will retain it to the exclusion of the other, though possession of the res be not taken,

through a receiver or otherwise. In re Lasserot, 240 Fed. 325, —— C. C. A. ——; Gluck & Becker on Receivers, 67, 68 (2d Ed. 89, 91), cited in Empire Trust Co. v. Brooks, 232 Fed. 641, 646, 146 C. C. A. 567.

[2] Nevertheless it is true that the pendency of an action in a state court is no bar to proceedings concerning the same matter in a federal court having jurisdiction. McClellan v. Carland, 217 U. S. 268, 30 Sup. Ct. 501, 54 L. Ed. 762.

[3] The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and this to the exclusion of other courts of co-ordinate jurisdiction assuming to exercise like power. Farmers' Loan, etc., Co. v. Lake St. Rd. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435.

"Nor," says the court in the Farmers' Loan Company Case, supra, "is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts."

In this case the Farmers' Loan & Trust Company commenced its suit to foreclose in the federal court, on January 30, 1896, at 10:35 a. m. On the same day, but shortly after the bill had been filed, the Lake Street Elevated Railroad Company filed its bill to restrain and enjoin the loan company from prosecuting any suit to foreclose, and a writ of injunction was forthwith issued and served. It was held that the federal court first obtained jurisdiction of the res by reason of the filing of its bill, notwithstanding the injunction in the state court was first issued and served, the court saying:

"The bill filed in the federal court looked to the enforcement of the trusts declared in the mortgage, the control of the railroad through a receiver, the sale of the railroad, and the final distribution of the assets of the company."

The Palmer Case was a proceeding in the state court of Texas to forfeit a permit of the oil company to do business in that state. The receiver had been appointed and qualified, and process served, although he had not taken actual possession of the property, and it was held that the state court had acquired constructive possession of the res as against the propriety of the federal court assuming possession through a receiver appointed by it.

These cases are illustrative of the application of the doctrine stated in the above-quoted paragraph.

A case also quite apposite for illustration of the principle is McKinney v. Landon, 209 Fed. 300, 126 C. C. A. 226. The state of Kansas, through its Attorney General, instituted quo warranto proceedings against a group of gas companies, with prayer for ouster and the appointment of receivers to take charge of the property and business. The cause was tried in the state court, and taken under advisement.

While it was in this condition suits were instituted in the federal court, one alleging insolvency and praying appointment of a receiver, and the other to foreclose, and a receiver was accordingly appointed before any was appointed by the state court. The jurisdiction of the federal court of the res was denied, the court saying:

"That actual seizure or possession is not essential, but that jurisdiction may be acquired by acts which according to established procedure, stand for dominion and in effect subject the property to judicial control."

[4] There is another principle enunciated by the courts and text-writers, namely, that where the controversy is not the same, that is, where the issues in one suit are different from those involved in another, and the subject-matter is not identical, there can be no infringement of jurisdiction as between the courts maintaining cognizance of the cases. This, it is maintained, rests on the ground that in such a case there is no conflict of jurisdiction as to the question or cause. In such cases, the first acquisition of the possession of the res dominates the authority to retain the same. Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567; Compton v. Jesup, 68 Fed. 263, 283, 15 C. C. A. 397; De La Vergne Refrig. Mach. Co. v. Palmetto Brewing Co. (C. C.) 72 Fed. 579; Gluck & Becker on Receivers, supra. The application of the principle is very well enunciated by Simonton, Circuit Judge, in Machinery Co. v. Brewing Co., supra, as follows:

"In view, therefore, of the fact that the controversy in the suit in this court is entirely distinct from that in the state court, and that the scope and purpose of the proceedings in the state court are not those of the proceedings in this court, connected with the fact that the receiver heretofore appointed in the main cause is in actual, peaceable possession of the property, and that the complainant holds a legal lien on the property, entitling it to its possession through a receiver, the mortgagor being insolvent, and that this court has been asked by it not to exercise an act of discretion, but to give effect to a right secured to it by the Constitution and laws of the United States, the prayer of the petition cannot be granted; and it is so ordered."

These principles, in either aspect, we think determine the case against appellants. That the controversies involved by the two suits are not the same is perfectly manifest. It is a little difficult to say just what the purpose of the suit in the state court was. It is manifestly not a suit to wind out the business of the concern, dispose of its assets, and distribute its proceeds among those entitled thereto. On the other hand, it was evidently designed that the irrigation company should be maintained as a going concern, and that the system which it had promoted should be repaired and completed. It is shown that the company had squandered its funds, which are denominated trust funds, to which the purchasers were entitled for the repair, maintenance, and upkeep of the system, and in this connection it is alleged that the plaintiffs in said action and others similarly situated "had by virtue of the premises and by operation of law and equity a first and prior lien and claim upon all of the assets of every kind, character, and description" of the irrigation company, and that the lien of the trust deed of the complainants in the foreclosure suit was inferior in rank to theirs. But there is not a semblance of a purpose shown to enforce such purchasers' liens as such. At most, the suit could be

construed only as one for the rehabilitation and reorganization of the irrigation company, and the readjustment of its affairs in that way so that the purchasers might reap the benefits of their purchases in pursuance of the original scheme for promoting and maintaining the irrigation system.

Now, it cannot be said that the suit in the state court is either an action in rem, suited to a disposal of the irrigation company's property, or one to enforce a lien, with the subjection of its property to the satisfaction thereof. Nor is it a suit to marshal assets for distribution among those entitled thereto, for such a thing was not contemplated. The only apparent object was that the affairs of the company might be administered for the time being under the supervision of the court for accomplishing the purposes of rehabilitation and reorganization. It is not such a suit that the full accomplishment of its purposes requires dominion and control over the res; so that, whether we apply the one principle or the other above ascertained, the trial court was right in maintaining possession of the res under its receivership.

We have not made mention of the bankruptcy matter, because it does not affect the result. The fact that a trustee in bankruptcy had been appointed and had taken possession of the res does not aid the complainants' possession in the foreclosure suit. It is only because the receiver in the federal court first obtained possession of the res that the court is entitled to maintain its jurisdiction respecting the same.

Affirmed.

4. RELEASE ☞16—VACATION—PARTIAL IMPEACHMENT.
   A release of personal injuries may be partially impeached, as where the injured party suffered injuries which, at the time the release was executed, were unknown to both.

5. RELEASE ☞16—ANNULMENT—GROUNDS.
   Where complainant, who was injured, did not know that he had incurred inguinal hernia, but thought that the only serious injury was to his

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes