**HAVNER, Atty. Gen. of Iowa, et al. v. HEGNES.** [*]

(Circuit Court of Appeals, Eighth Circuit. November 22, 1920.)

No. 5643.

1. Courts ⚖═493(3), 497—Priority of jurisdiction, as dependent on identity of controversy, stated.

Where the controversy or the parties are the same in different actions pending in courts of concurrent jurisdiction, the court first acquiring jurisdiction of the controversy will retain it, to the exclusion of the other, though possession of the res be not taken; but where the controversy is not the same, the issues being different and the subject-matter not identical, the court which first acquires the actual or constructive possession of property is entitled to retain it.

2. Corporations ⚖═189(11)—Federal equity rule held not to apply to suit by stockholder against corporation for fraud of officers and agents.

Equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv), relating to stockholders' suits on causes of action enforceable on behalf of the corporation, does not apply to a suit against the corporation for fraud of its officers and agents in selling stock.

3. Courts ⚖═508(2)—Federal court may restrain interference with property in possession of court.

Judicial Code, § 265 (Comp. St. § 1242), prohibiting federal courts from granting injunctions to stay proceedings in a state court, does not deprive a federal court of power to enjoin parties litigant or other persons from proceeding by judicial proceedings or otherwise to interfere with property of which the court has the actual or constructive possession.

4. Action ⚖═64—Courts ⚖═498—Filing of bill for receiver vests court with constructive possession of property.

The filing of a bill against a corporation and the issuance of process, subsequently served, constitutes the beginning of the suit and where an order to show cause why a receiver should not be appointed is issued at the same time, the appointment of a receiver on return day of the order,

---

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied March 30, 1921.

after due service of the subpœna, relates back to the filing of the bill, and the court is vested with constructive possession of defendant's property from that date, to the exclusion of any other court in a suit subsequently commenced.

5. **Courts** ⬅➡508.(2)—**Injunction to protect possession of receiver of federal court should not be directed to state court judge.**

An injunction issued by a federal court to restrain interference with the possession of property by its receiver by a receiver appointed by a state court should be directed only to the state receiver, and not extended to the judge who appointed him.

Appeal from the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Suit in equity by Peter J. Hegnes against the Midland Packing Company, H. M. Havner, Attorney General of the State of Iowa, and others, appeal from an order granting an injunction. Modified and affirmed.

Frederick F. Faville, of Ft. Dodge, Iowa (H. M. Havner, of Des Moines, Iowa, and Robert Healy, of Ft. Dodge, Iowa, on the brief), for appellants.

E. E. Wagner, of Sioux City, Iowa (A. B. Carlson, of Canton, S. D., and G. M. Caster, of Lake Andes, S. D., on the brief), for appellee.

C. M. Stilwill, of Sioux City, Iowa, amicus curiæ.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. On April 26, 1920, appellee, hereafter called plaintiff, a citizen of South Dakota, commenced this action against the Midland Packing Company, hereafter called defendant, a corporation organized and existing under the laws of Iowa, by filing a complaint in the United States District Court for the Northern District of Iowa, wherein it was alleged in substance that the defendant, through its agents and officers, had by fraud and false representations, the particulars of which were set forth and duly negatived, obtained from plaintiff his negotiable promissory notes in the sum of $110,000 in payment of shares of the capital stock of said defendant; that four of said promissory notes, of $6,250 each, had been sold to innocent purchasers; that defendant held $3,000,000 or $4,000,000 par value of notes of other citizens of South Dakota, Iowa, and Nebraska, all obtained in a manner similar to those obtained of plaintiff; that plaintiff commenced his action, not only in his own behalf, but in behalf of all other creditors and stockholders of said defendant, similarly situated; that plaintiff was the owner of 30 shares of the capital stock of said defendant; that said capital stock, which aggregated $8,000,000, had all been largely sold pursuant to the same scheme of fraud as has been described; that the officers of defendant, under whose management said alleged frauds had been carried on, were in possession and control of its property and assets, and were threatening to dispose of all said promissory notes to innocent purchasers; that

defendant was either insolvent or in imminent danger of insolvency; that defendant had expended over $3,000,000 in the construction of a packing plant, and had collected money and taken notes for the sale of stock in the sum of $8,000,000 or $9,000,000; that said defendant had no funds on hand for a working capital. This last allegation was contained in an amendment to the complaint filed May 25, 1920, which the trial court had a right to consider, as well as the intervening petition of 32 citizens of South Dakota, Iowa, and Nebraska, filed on the same date, in which said citizens asked to join with the plaintiff in obtaining the relief prayed for. The court had the right to consider the amendment referred to, and also the intervening petition, for the same reason that it had the right to consider affidavits or any other facts presented to it bearing upon the question whether a receiver should be appointed or not. The complaint also charged in substance that the officers of defendant, under a pretense of constructing a packing plant, had procured promissory notes in the amount specified from the citizens of South Dakota, Iowa, and Nebraska, with the intention of converting the proceeds thereof to their own use, without in good faith intending to carry on the business of buying and killing live stock, and preserving, curing, storing, and selling meats and other products usually manufactured by packing houses.

The complaint filed on April 26, 1920, prayed for a rescission of the contract wherein plaintiff had agreed to purchase the shares of stock therein mentioned; that the notes be canceled, and that, if any of the notes above mentioned should be found to have been transferred or placed beyond control of defendant, the plaintiff should have judgment for the face value of the same, together with interest according to the terms thereof; that an injunction be issued restraining the sale of the notes, and that defendant be ordered to show cause why a receiver should not be appointed to take exclusive charge of the property and assets of defendant and for general relief. On the same date that the complaint was filed, said federal court issued a subpœna and made and issued an order requiring the defendant to show cause on May 25, 1920, why a receiver should not be appointed as prayed. This order and subpœna, with copy of complaint, were served on R. M. Stokes, general auditor of defendant, April 27, 1920, and on B. I. Salinger, Jr., vice president thereof, on May 8, 1920.

On May 7, 1920, H. M. Havner, Attorney General of the state of Iowa, one of the appellants, commenced an action in the district court of Woodbury county, Iowa, entitled "State of Iowa ex. rel. H. M. Havner, Attorney General, v. Midland Packing Company." The object of this action was to dissolve the defendant as a corporation and wind up its affairs for alleged violations of the laws of Iowa. It was pleaded in the petition in said action that it was necessary that immediate action be taken to appoint a temporary receiver and a permanent receiver as soon as might be thereafter. On the same date J. A. Johnson, clerk of said state court and one of the appellants, was appointed temporary receiver to take charge of the property and assets of the defendant, the order of appointment being signed by Hon. John W. Anderson, one of the judges of said state court, and also one of the

appellants. The receiver so appointed, on the date of his appointment, took actual custody and control of the property and assets of defendant. On May 11, 1920, the plaintiff in the present action applied to the court below for an order requiring the appellants to show cause on May 25, 1920, why they should not be enjoined from proceeding further in the case pending in the state court. A show-cause order with a meantime restraining clause was duly issued as prayed. On May 18, 1920, the complaint in the present action was taken as confessed. On May 25, 1920, the federal court made an order enjoining appellants from proceeding further in the action in the state court, and ordered the receiver appointed by that court to turn over the property and assets of the defendant to the receivers then and there appointed by the federal court. Appellants have appealed from said order.

[1] The arguments at the bar have taken a somewhat wider range than the question involved warrants. The question is: Who is entitled to the possession of the property and assets of defendant, the receiver appointed by the state court or the receivers appointed by the federal court? The appeal does not present a case where the controversy or the parties are the same in different actions pending in courts of concurrent jurisdiction. In such a case the weight of authority seems to be that the court first acquiring jurisdiction of the controversy will retain it, to the exclusion of the other, though possession of the res be not taken. In re Lasserot, 240 Fed. 325, 153 C. C. A. 251; Gluck & Becker on Receivers, 67, 68 (2d Ed., 89, 91); Empire Trust Co. v. Brooks, 232 Fed. 641, 146 C. C. A. 567; Knudsen v. First Trust & Savings Bank, 245 Fed. 81, 157 C. C. A. 377; In re Chetwood, 165 U. S. loc. cit. 460, 17 Sup. Ct. 385, 41 L. Ed. 782; Moran v. Sturges, 154 U. S. loc. cit. 273, 14 Sup. Ct. 1019, 38 L. Ed. 981. Where the controversy, however, is not the same, the issues being different in one suit from those involved in another, and the subject-matter is not identical, there can be no infringement of jurisdiction as between the courts maintaining cognizance of the cases. This rule rests on the ground that in such a case there is no conflict of jurisdiction as to the question or cause. In such cases the court which first acquires the actual or constructive possession of property is entitled to retain the same. Empire Trust Co. v. Brooks, supra; De La Vergne Refrig. Mach. Co. v. Palmetto Brewing Co. (C. C.) 72 Fed. 579; Gluck & Becker on Receivers, supra; Knudsen v. First Trust & Savings Bank, supra; Corpus Juris, vol. 15, p. 1169, where cases almost without number are cited in support of the rule stated. This court said in Mound City v. Castleman, 187 Fed. loc. cit. 924, 110 C. C. A. loc. cit. 58:

"The court which first acquires the lawful jurisdiction of specific property by the seizure thereof or by the due commencement of a suit, from which it appears that it is or will become necessary to a determination of the controversy involved or to the enforcement of its judgment or decree therein for the court to seize, to charge with a lien, to sell, or to exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court so far as necessary to accomplish the purpose of the suit, and entitles that court to retain control of it requisite to effectuate its final judgment or decree therein free from the interference of every other tribunal"—citing many cases.

The issues and parties not being the same in the present action and the one pending in the state court, the rule last above stated applies. There is no conflict of jurisdiction as to the causes of action, but simply as to the possession of property, and the court which first acquired actual or constructive possession of the property and assets of defendant has a right to retain the same to the exclusion of all other courts. The question is, therefore: Which court, the federal or state, first acquired actual or constructive possession of the property of defendant? It is conceded that the latter first acquired actual possession; but did the federal court, at the time the receiver appointed by the state court took actual possession, have lawful constructive possession of the same? If it did, the receiver appointed by the state court had no authority to take possession. The solution of the question involved requires a consideration of the exact status of the case pending in the federal court, and, before considering that status, it is well to bear in mind, that, assuming the federal court to have jurisdiction of the question as to whether a receiver should be appointed or not, no mere erroneous conclusion reached in considering that question can effect the validity of its action so far as the question before the court is concerned. In this connection we quote the language used by Justice Grier, in Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841:

"It is a doctrine of law, too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court, and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy, being liable to a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice."

[2] The objection that equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) was not complied with so far as plaintiff's complaint is concerned is not well taken. The rule referred to provides that where a corporation has a cause of action against third parties, and it refuses to enforce such cause of action in order to protect the rights of the corporation, a stockholder, if he seeks to enforce this cause of action which might have been asserted by the corporation, must plead the matters stated in rule 27, and in such cases the corporation by necessity is made defendant, because it has refused to be plaintiff. The rule is not applicable to the present case. The plaintiff is both a creditor and a stockholder, and the proceeding is directly against the corporation, asserting no right which the corporation could assert in the sense of the rule. Again, the objection that the complaint filed by the plaintiff would not constitute a lis pendens is of no particular importance, as there is no party before the court who is claiming that he is an innocent purchaser of any of the property of the defendant without notice. The receiver appointed by the state court occupies no such position.

[3] The objection that plaintiff did not comply with rule 23 of the Rules of Practice of the federal court in failing to serve copies of the moving papers, including affidavits or other evidence relied upon, did not affect the jurisdiction of the federal court to act. Section 265, Judicial Code (Comp. St. § 1242), did not deprive the federal court of the power to enjoin parties litigant or other persons from proceeding by judicial proceedings or otherwise to interfere with property of which said court had the actual or constructive possession. Marshall v. Holmes, 142 U. S. 589, 596, 599, 12 Sup. Ct. 62, 35 L. Ed. 870; Simon v. Southern Railway, 236 U. S. 115, 124, 129, 35 Sup. Ct. 255, 59 L. Ed. 492; National Surety Co. v. State Bank, 120 Fed. 593, 600, 602, 56 C. C. A. 657, 61 L. R. A. 394; Schultz v. Highland Gold Mines Co. (C. C.) 158 Fed. 337, 340. See long list of cases to the same effect in 15 C. J. p. 1179.

[4] The complaint filed by the plaintiff certainly authorized the federal court, it having jurisdiction of the parties and subject-matter, to enter upon an inquiry as to whether a receiver should be appointed or not. In entering upon such inquiry it did not seem to it that a heroic remedy was necessary; but it proceeded in an orderly manner, and at once upon the filing of the complaint issued an order wherein the defendant was required to show cause why a receiver should not be appointed. This proceeding to appoint a receiver was of the same nature, in regard to the same issues, and for the same purpose, as the proceeding in the state court to appoint a receiver. The federal court had a right to proceed in the way it did. It had the question of receiver or no receiver before it. It ought not to be the law that in such circumstances another court of concurrent jurisdiction should be able, on account of immediate necessity, to so interfere with the process of the federal court as to render its final conclusion as to the appointment of a receiver of no avail to the parties before it. If the action on the part of the state court as shown by the present record can be sustained, then any court that is proceeding according to due process of law and in an orderly manner may have its action defeated by a court which is more expeditious.

The objection is made that R. M. Stokes was not a proper officer of the defendant upon whom the show-cause order and subpoena could be served, and that therefore the federal court obtained no jurisdiction until after May 7, 1920, the date upon which the receiver in the state court was appointed. The filing of the complaint and the issuance of process, with intent that the process should be served, was the commencement of the action. The court had the right to issue the order to show cause, even before service upon the defendant. Valid service was made upon the vice president of defendant on May 8, 1920; no other officer than Stokes upon whom to make service having been found prior to that date. This service was 17 days prior to the date that the federal court acted in appointing a receiver. So at the time the federal receiver was appointed the court had unquestioned jurisdiction, and the appointment relates back and should be considered as of the date the complaint was filed and the show-cause order issued. Any other conclusion would render the time between the issuance of

the show-cause order and the hearing of the same a period during which the whole proceeding could be frustrated by the action of some other court. The following cases support in principle the conclusions above reached: Farmers' Loan & Trust Co. v. Lake St. Elevated Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667; Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435; Gaylord v. Ft. Wayne, etc., 10 Fed. Cas. No. 5284, page 121; M'Kinney v. Landon, 209 Fed. 300, 126 C. C. A. 226; Stirling v. Seattle Co., 198 Fed. 913; Martin v. Oliver, 260 Fed. 89, 171 C. C. A. 125; Swift v. Black Panther Oil & Gas Co., 244 Fed. 20, 156 C. C. A. 448; Adams v. M. T. Co., 66 Fed. 617, 15 C. C. A. 1.

The facts in the present case bring it far within the rule established by the cases of Farmers' Loan & Trust Co. v. Lake St. Elevated Co., supra, and Mound City Co. v. Castleman, supra, for the reason that immediately upon filing the complaint a show-cause order was issued requiring defendant to show cause why a receiver should not be appointed. The court went so far in the case referred to as to apply the rule—

"in suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected."

On this branch of the case, we are of the opinion that, by the filing of the plaintiff's complaint, the issuance of the show-cause order, and the final appointment of a receiver, the federal court obtained constructive possession of the property and assets of the defendant, and that it was beyond the power of the state court to interfere with such possession by the appointment of a receiver. If we are correct in so deciding, then the federal court had jurisdiction and authority to restrain any person or officer who should attempt to interfere with its possession of the property.

[5] We are of the opinion, however, that the injunction issued by the federal court was too broad in its terms. The judge of the state court ought not to have been enjoined. Courts only move in pursuance to the request and contentions of parties litigant. They have no interest in a controversy, other than to see that justice is administered; therefore an injunction, where necessary and proper, against parties litigant, is sufficient for all purposes. The Attorney General ought not to have been enjoined from proceeding in the action in the state court for the purpose of dissolving the corporation, as this could be legally done regardless of its assets. Robinson v. Mutual Res. Life Ins. Co. (C. C.) 162 Fed. 794; Scovill v. Same (C. C.) 162 Fed. 794.

An orderly way to have proceeded would have been for the receivers appointed in the federal court to have applied to the state court for an order instructing its receiver to turn the assets and property of the corporation over to the receivers appointed by the federal court; this proceeding, of course, being subject to the right of the federal court to protect the property from unauthorized acts. It results from the foregoing that the order appointing the receivers in the federal court should be affirmed, and the injunction should be modified, so as to enjoin the receiver of the state court only, and, as so modified, af-

firmed. We leave the injunction in force as to the receiver of the state court, as we are not informed as to the present status of the property, but presume that an amicable arrangement may settle the question of possession.

It is so ordered.