Argued October 4, affirmed December 27, 1917, rehearing denied February 13, 1918.

# BRAYTON & LAWBAUGH *v.* MONARCH LUMBER CO.

### (169 Pac. 528; 170 Pac. 717.)

**Corporations—Creditors' Suit—Avoiding Mortgage—Fraud—Evidence.**

1. Evidence, in suit by nonsecured creditors of a corporation to defeat or reduce the amount of its mortgage, *held* to show the indebtedness represented by the mortgage and secured notes to be free from fraud.

**Usury—Persons Entitled to Take Advantage.**

2. Even if the notes secured by a mortgage be usurious, this cannot, to the extent of the principal, avail a subsequent judgment creditor of the mortgagor; the debt without interest being under Section 6030, L. O. L., payable to the state for the school fund, and the mortgage being a mere incident of the debt.

**Usury—Forfeiture—Suit for Determination.**

3. The suit in which under Section 6030, L. O. L., it can be determined that mortgage notes are usurious, and the principal payable to the state for the school fund, is one on the mortgage or notes.

**Corporations—Creditors' Suit—Avoiding Deed.**

4. Conveyances by an insolvent corporation of all its assets to another corporation without property, consideration for which failed, and conveyances of such property by the second corporation without authorization to the mortgagees of the first corporation, knowing of the circumstances, are properly annulled at suit of the creditors of the first corporation.

**Mortgages—Receiver—Mortgagee in Possession.**

5. Receiver of mortgaged property of an insolvent is properly appointed at suit of mortgagor's creditors, though the mortgagee or its alienee be rightfully in possession; both being insolvent, and the expenses of caring for property exceeding receipts from sales and rentals.

> [As to when receivers may be appointed to take care of mortgaged property, see note in 72 **Am. St. Rep.** 74.]

From Multnomah: John P. Kavanaugh, Judge.

Department 1.    Statement by Mr. Justice Harris.

Brayton & Lawbaugh, Ltd., a corporation, brought this suit against the Monarch Lumber Company, a corporation organized under the laws of Oregon, the Monarch Lumber Company, a corporation created under the laws of Maine, the Assets Realization Company, a New Jersey corporation with an office in Chicago, William W. Crawford as an individual and as a trustee, W. T. Patton and John Bjelik. The Assets Realization Company, its agents and trustees Ira M. Cobe, Grayson M. P. Murphy and William W. Crawford on the one side and the judgment creditors of the Monarch Lumber Company of Oregon on the other side, have been litigating the title and possession of property which was once owned by the Monarch Lumber Company of Oregon. The litigation embraces two suits: this one and also the one prosecuted by Grayson M. P. Murphy against John Bjelik, W. T. Patton, Brayton & Lawbaugh, Ltd., and A. C. Springer. The suit brought by Murphy resulted in a decree in this court adjudging that a sheriff's deed, relied upon by him, was void for the reason that the precedent levy was void. Although our opinion rendered this day in the Murphy case contains a lengthy statement of all the facts involved there, it will nevertheless be necessary here not only to restate some of the facts but also to give a more detailed account of several transactions.

The Monarch Lumber Company of Oregon was the owner of real estate on Oregon Slough upon which was located a modern sawmill plant with a capacity of 300,000 feet per ten hours. In addition to the sawmill plant which included a planing mill, dry-kilns and such appliances and equipment as are usually found

with a modern sawmill, the company owned a block of ground in Kenton which was used as a retail lumber-yard. It also had on hand at all times a considerable quantity of manufactured lumber and it operated retail lumber yards at different places in the state. In this as in the Murphy suit the Oregon Slough property will be referred to as Tract A and the Kenton property will be designated as Tract B.

Under date of September 1, 1911, the Monarch Lumber Company of Oregon executed twelve promissory notes payable, to the order of itself, on September 1, 1912, with interest until maturity at the rate of six per cent per annum and at the rate of seven per cent per annum after maturity. The twelve notes were for the aggregate sum of $300,000, each being for the principal sum of $25,000. The Monarch Lumber Company of Oregon secured these notes by executing to William W. Crawford, trustee, a trust deed, hereinafter called a mortgage, bearing date September 1, 1911, and covering Tracts A and B as well as all other property owned by the company. The maker of the notes indorsed each of them. Each note was indorsed and guaranteed by the David Investment Company, a corporation, and by Lester W. David. The Assets Realization Company acquired the notes and became the owner of them.

The Monarch Lumber Company of Oregon conveyed Tract A to the Monarch Lumber Company of Maine by a deed which is dated July 30, 1913, and was recorded July 31, 1913. The Monarch Lumber Company of Oregon transferred all its personal property to the Monarch Lumber Company of Maine by a bill of sale dated July 30, 1913, and filed for record on August 14, 1913. Tract B was transferred to the Monarch Lumber Company of Maine by the Monarch Lumber Com-

pany of Oregon by a deed which is dated August 4, 1913, and was recorded September 6, 1913.

The Monarch Lumber Company of Maine conveyed Tracts A and B to Ira M. Cobe by a deed dated September 4, 1913, and recorded September 6, 1913, and transferred all the personal property to Ira M. Cobe by a bill of sale which is likewise dated September 4, 1913, and was recorded September 6, 1913. Cobe deeded Tracts A and B to Grayson M. P. Murphy by an instrument dated January 22, 1915.

Ira M. Cobe was one of the vice-presidents of the Assets Realization Company. He severed his connection with the company about October, 1914, and was succeeded by Grayson M. P. Murphy. When the Monarch Lumber Company of Maine transferred all the personalty and Tracts A and B to Cobe he took charge of the property and from time to time sold lumber and other articles of personal property; and when Cobe conveyed to Murphy the latter continued to sell such part of the personal property as he could dispose of. Cobe and Murphy acted as trustees for the Assets Realization Company and their acts may be regarded as the acts of that company.

Although the Spencer judgment, the sale of Tracts A and B under the execution issued on the Spencer judgment, and the sheriff's deed to Murphy are referred to in some of the pleadings in the instant suit, no statement need here be made of the facts involved in the sheriff's deed to Murphy for the reason that a complete account of that transaction may be found in the opinion which we have this day rendered holding that the sheriff's deed is void. Eliminating all that is said about the sheriff's deed to Murphy, we can now attempt to give the substance of the numerous plead-

ings as we find them in 170 printed pages of the abstract.

The plaintiff Brayton & Laubaugh, Ltd., alleges that it commenced an action against the Monarch Lumber Company of Oregon on August 13, 1913, and on that day attached Tract A and that on December 8, 1913, the action culminated in a judgment and order of sale of attached property; that the Monarch Lumber Company of Oregon owed more than half a million dollars to different persons, firms and corporations including an indebtedness of $200,000 to the Assets Realization Company; that the Monarch Lumber Company of Oregon, the Assets Realization Company, William W. Crawford and Ira M. Cobe entered into a conspiracy to give the Assets Realization Company a preference and to defraud the other creditors; that in pursuance of such conspiracy the notes and mortgage were given for $300,000 and that consequently the excess above $200,000 is usurious and fraudulent. The complaint also alleges that in furtherance of the conspiracy to defraud creditors the Monarch Lumber Company of Oregon, the Assets Realization Company, Ira M. Cobe and William W. Crawford caused the Monarch Lumber Company of Maine to be organized and then caused the assets of the Monarch Lumber Company of Oregon to-be transferred to the Monarch Lumber Company of Maine. The plaintiff also charges that the deed and bill of sale to Cobe were made for the purpose of defrauding the creditors of the Monarch Lumber Company of Oregon. The complaint concludes with a prayer for the annulment of the deeds and bills of sale, a cancellation of the mortgage and of the notes held by the Assets Realization Company and that the amount of its claim be ascertained and reduced to a general instead of a preferred claim against the Mon-

87 Or.—24

arch Lumber Company of Oregon, and for an accounting by Cobe, Murphy, Crawford and the Assets Realization Company.

The answering defendants are W. T. Patton who obtained a judgment against the Monarch Lumber Company of Oregon on September 5, 1913, John Bjelik a judgment creditor of the Monarch Lumber Company of Oregon, William W. Crawford, individually and as trustee, the Monarch Lumber Company of Oregon and the Monarch Lumber Company of Maine, and the Assets Realization Company. The answer which Crawford filed to the complaint is a denial of the charge of conspiracy and a recital by way of admissions and allegations of the execution of the mortgage to him. His prayer is for a dismissal of the complaint.

The Assets Realization Company answered the complaint by alleging that the Monarch Lumber Company of Oregon executed the notes and mortgage for the purpose of funding its indebtedness; that the David Investment Company agreed to purchase the notes and to pay $264,000 cash and allow a credit of $36,000 on an indebtedness of approximately $57,000 then owing from the Monarch Lumber Company of Oregon to the David Investment Company; that the Monarch Lumber Company of Oregon was a going concern owning property worth $500,000; that the transfers to the Monarch Lumber Company of Maine were not made for the purpose of defrauding creditors but that they were made with the consent of the creditors and for the avowed purpose of providing means for the payment of the creditors; that the transfers to Cobe were not made in discharge of the notes held by the Assets Realization Company but that they were executed for the purpose of putting Cobe in possession of the property as an agent of Crawford, the trustee who held the

mortgage, and that accordingly Cobe took possession, cared for the property and from time to time sold personalty, using the proceeds to pay expenses. The prayer is that the complaint be dismissed.

The Monarch Lumber Company of Oregon and the Monarch Lumber Company of Maine joined in an answer which concludes with a prayer for the dismissal of the complaint.

W. T. Patton and John Bjelik each filed an answer and a cross-complaint. Patton secured a judgment for $803.95 against the Monarch Lumber Company of Oregon. The judgment was docketed on September 5, 1913, and an execution was issued and Tracts A and B were sold on November 17, 1913, by the sheriff to W. T. Patton for $837.68. The sale was confirmed on December 24, 1913, and on December 26, 1914, a sheriff's deed was delivered to Patton and the instrument was recorded on January 28, 1915. Bjelik recovered a judgment for $3,084.65 against the Monarch Lumber Company of Oregon on June 30, 1913, for an injury which was sustained on December 26, 1912.

The answer and cross-complaint interposed by Patton recites the judgment recovered by him, the sale of Tracts A and B on the execution issued upon his judgment and the delivery of the sheriff's deed to him. Patton then avers that the Monarch Lumber Company of Oregon and the Assets Realization Company agreed that the former would convey its assets to the latter in satisfaction of the indebtedness owing from the lumber company and that the agreement was carried out by the transfer to the Monarch Lumber Company of Maine which in turn conveyed to Cobe who held as a trustee for the Assets Realization Company. The prayer is that Patton be deemed to be the owner of

Tracts A and B freed from any claim of the Assets Realization Company or its agents Cobe and Murphy.

The Monarch Lumber Company of Oregon and the Monarch Lumber Company of Maine joined in an answer to the Patton cross-complaint, by alleging that the conveyances from the former to the latter company were with the consent of the creditors of the Monarch Lumber Company of Oregon; and that the transfers to Cobe were as further security for the notes held by the Assets Realization Company.

William W. Crawford and the Assets Realization Company joined in an answer to the Patton cross-complaint. This answer repeats the claim that the conveyances to the Monarch Lumber Company of Maine were made with the consent of the creditors of the Monarch Lumber Company of Oregon and that the property was then transferred to Cobe as further security for the notes owned by the Assets Realization Company. A complete account is given of their version of the execution of the notes and mortgage, the indorsements made upon the paper and the acquirement of the notes by the Assets Realization Company.

The answer and cross-complaint submitted by Bjelik is much like the answer and cross-complaint submitted by Patton and yet there are some differences between the two pleadings. Bjelik pleads his judgment against the Monarch Lumber Company of Oregon. He alleges that the notes and mortgage were given for a bonus of $36,000 and that they are usurious; that in 1913 the Monarch Lumber Company of Oregon was hopelessly insolvent; that Cobe, the Assets Realization Company and the Monarch Lumber Company of Oregon caused the Monarch Lumber Company of Maine to be created so that it could take over all the assets of the Monarch Lumber Company of Oregon under a plan of reorgan-

ization which contemplated the sale of stock to be issued by the Monarch Lumber Company of Maine and the application of the proceeds of such sale to the claims of creditors of the Monarch Lumber Company of Oregon; that the assets were all conveyed to Cobe before any sales could be made of the stock issued by the Monarch Lumber Company of Maine; and that the conveyances as actually made to the Monarch Lumber Company of Maine and to Cobe were in fraud of the creditors of the Monarch Lumber Company of Oregon. This pleading prays that the conveyances to the Monarch Lumber Company of Maine and to Cobe be declared to have been made to defraud the creditors of the Monarch Lumber Company of Oregon; that Tracts A and B and the remaining personalty be decreed to be the property of the Monarch Lumber Company of Oregon; that Cobe, Murphy and the Assets Realization Company be required to account for the moneys received by them from the sales of lumber and other property; and that a receiver be appointed.

The Monarch Lumber Company of Oregon and the Monarch Lumber Company of Maine answered Bjelik by reiterating the allegations made by them in other pleadings to the effect that the transfers to the Monarch Lumber Company of Maine and to Cobe were made with the consent of the creditors and that Cobe took the property as further security.

The answer of the Assets Realization Company and Crawford is much like their answer to the Patton cross-complaint. They aver that the conveyances received by the Monarch Lumber Company of Maine and by Cobe were executed with the consent of the creditors and that Cobe took possession of the property as agent for William W. Crawford, the trustee, and the Assets Realization Company, the owner of the notes, and for

the purpose of enabling him to dispose of such portions of the personalty as were not required in the maintenance of the mortgaged property and to use the proceeds of sale for the care, protection and maintenance of the remaining property.

After this suit had been commenced and during its pendency, on the separate motions of Bjelik and Patton the court appointed a receiver to take charge of all the property involved in this suit.

A trial resulted in a decree annulling the deeds to the Monarch Lumber Company of Maine, the deed to Cobe and the deed to Murphy; declaring that the Bjelik judgment is a valid lien on Tracts A and B and that the Brayton & Lawbaugh, Ltd., judgment is a lien upon Tract A; and adjudging that W. T. Patton owned Tracts A and B free from claims on the part of the Monarch Lumber Company of Oregon, the Monarch Lumber Company of Maine, Ira M. Cobe and Grayson M. P. Murphy, but subject, however, to the judgment liens in favor of Bjelik and Brayton & Lawbaugh, Ltd. The decree also gives certain directions to the receiver. Although the trial court found that the transactions between the Monarch Lumber Company of Oregon, the David Investment Company, Lester W. David and the Assets Realization Company constituted a loan of money by the Assets Realization Company to the Monarch Lumber Company of Oregon, yet no express reference is made in the decree to the notes or mortgage. The Assets Realization Company, William W. Crawford, individually and as trustee, the Monarch Lumber Company of Oregon and the Monarch Lumber Company of Maine appealed.    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Teal, Minor & Winfree* and *Messrs. Wilson,*

*Neal & Rossman,* with oral arguments by *Mr. Wirt Minor* and *Mr. Oscar A. Neal.*

For respondents, Brayton & Lawbaugh, there was a brief over the names of *Mr. Hugh Montgomery* and *Messrs. Platt & Platt,* with an oral argument by *Mr. Montgomery.*

For respondents, W. T. Patton and John Bjelik, there was a brief with oral arguments by *Mr. J. W. Kaste* and *Mr. Maurice W. Seitz.*

MR. JUSTICE HARRIS delivered the opinion of the court.

In the final analysis, the contest here, as in the Murphy suit, is one between judgment creditors on the one side and the Assets Realization Company on the other. Our opinion in the Murphy suit disposed of the questions arising out of the Spencer judgment, and hence the instant proceeding may be regarded as the complement of the Murphy suit, for this contest involves the remaining phases of the litigation between the parties. Since it was determined in the Murphy suit that the sheriff's deed to Murphy was void, it follows that the Assets Realization Company must now rest its claims upon the notes and mortgage and the conveyances to Cobe and Murphy. It must be remembered that the notes and mortgage were executed in September, 1911, and hence are prior to the respective judgments obtained by Bjelik on June 30, 1913, by Patton on September 5, 1913, and by Brayton & Lawbaugh, Ltd., on December 8, 1913. Throughout the discussion it must be kept in mind that Crawford is merely a trustee holding the mortgage for the benefit of the owner of the notes; and that both Cobe and Murphy at all times stood in the position of agents and

trustees for the Assets Realization Company. For all practical purposes the transfers to Cobe and the conveyances to Murphy were transfers and conveyances to the Assets Realization Company. The main questions yet to be decided relate: (1) To the indebtedness represented by the notes and mortgage; (2) to the validity and effect of the deeds and bill of sale to the Monarch Lumber Company of Maine and the subsequent transfers to Cobe and Murphy; and (3) the validity of the appointment of the receiver. These three questions will be discussed in the order named.

1. The inquiry concerning the notes and mortgage necessarily involves a statement of the relationships between the persons and corporations dealing with the paper, as well as the financial condition of the maker of the notes. The Monarch Lumber Company of Oregon had completed a modern sawmill plant; and, while the evidence fails to disclose the exact amount, we infer from the scattered references in the transcript of the evidence and from statements in the briefs, that the company owed about $250,000. The lumber company did not own any timber; and hence being heavily in debt and without logs to saw, it became necessary to procure money so that it could not only pay its existing indebtedness but could also operate the mill. The David Investment Company was a Washington corporation capitalized at $2,000,000 with a paid-up capital of about $1,600,000. Lester W. David owned about three-fourths of the stock issued by the David Investment Company and was the president of it. Lester W. David was also the president of the Monarch Lumber Company of Oregon. The David Investment Company owned about three-fourths of the stock issued by the Monarch Lumber Company of Oregon; and therefore Lester W. David was for all

practical purposes the owner of both companies since he owned three-fourths of the stock of the David Investment Company and that company in turn owned about three-fourths of the stock of the Monarch Lumber Company of Oregon. The David Investment Company had advanced moneys from time to time to the Monarch Lumber Company of Oregon and the latter owed the former company about $57,000. An officer and stockholder of the David Investment Company went to Chicago and interviewed the Assets Realization Company about a loan. He was followed by Lester W. David who, upon his arrival in Chicago, conducted the negotiations with the Assets Realization Company. The negotiations continued for several weeks. The Assets Realization Company sent an appraiser to Oregon to inspect and report upon the holdings of the Monarch Lumber Company of Oregon; and after inspecting the properties and examining the books of the lumber company and those of the David Investment Company he reported to the Assets Realization Company, giving the result of his examination and stating that the property would probably sell at quick sale for $500,000, and that the David Investment Company was a creditor of the Monarch Lumber Company of Oregon.

The notes and mortgage were prepared in August, 1911, are dated September 1, 1911, and were executed on or before September 16, 1911. Under date of September 18, 1911, the David Investment Company, by Lester W. David, its president, addressed a letter attested by its treasurer to the Monarch Lumber Company of Oregon saying that the David Investment Company agreed to purchase the lumber company's twelve notes for $25,000 each, dated September 1, 1911, and would pay for the notes by giving $264,000 in cash

and crediting $36,000 on the indebtedness owing to the writer. At the bottom of this letter was written "Accepted Monarch Lumber Company of Oregon by Lester W. David its President."

Under date of September 19, 1911, the David Investment Company, by its president Lester W. David, addressed a letter to the Assets Realization Company reciting that the writer had undertaken to purchase from the Monarch Lumber Company of Oregon its twelve promissory notes and that it had agreed to pay cash and credits for the notes, and offering to sell the paper to the Assets Realization Company. The letter was accompanied by a copy of the letter which had been addressed to the Monarch Lumber Company of Oregon. A meeting of the board of directors of the Monarch Lumber Company of Oregon was held on September 9, 1911, and a resolution was passed authorizing the president and secretary to execute the twelve notes and mortgage. A meeting of the board of directors of the David Investment Company was held on September 19, 1911, and a resolution was adopted authorizing the president and treasurer of the company to execute upon the back of each of the twelve notes a guaranty of the indebtedness evidenced by the paper. Both letters signed by the David Investment Company as well as the resolution passed by the board of directors of the Monarch Lumber Company of Oregon and the resolution adopted by the board of directors of the David Investment Company were prepared by Jacob Levin, the attorney for the Assets Realization Company. The David Investment Company received a check from the Assets Realization Company on September 26, 1911, for the sum of $263,473.06, which was immediately deposited in a Chicago bank. At the request of Lester W. David, the

Chicago bank transmitted the amount by wire to a bank in Portland, Oregon, where the sum of $263,473.06 was deposited on September 27, 1911, to the credit of the Monarch Lumber Company of Oregon. On the same day, September 27, 1911, according to a certificate sworn to on September 29, 1911, by the accountant of the Monarch Lumber Company of Oregon, an entry was made upon the books of the Monarch Lumber Company of Oregon crediting the David Investment Company with $263,473.06 cash to apply upon the notes which had been charged to the David Investment Company, and the further sum of $36,526.94 was entered upon the books of the Monarch Lumber Company of Oregon to the account of the David Investment Company.

The charge made by Brayton & Lawbaugh, Ltd., in its complaint, that the Monarch Lumber Company of Oregon owed the Assets Realization Company only about $200,000 and that the notes and mortgage were given for the purpose of preferring the Assets Realization Company and to defraud other creditors, is disproved by the evidence. Neither Lester W. David nor the Monarch Lumber Company of Oregon nor the David Investment Company had ever dealt with the Assets Realization Company prior to the negotiations which resulted in the execution of the notes and mortgage. The Monarch Lumber Company of Oregon owed about a quarter of a million dollars and it was without means with which to operate its sawmill. As the owner of most of the stock of the lumber company the David Investment Company was necessarily interested in procuring money with which to pay the indebtedness of the Monarch Lumber Company of Oregon; and as the owner of most of the stock of the David Investment Company, Lester W. David was desirous

of securing funds for the Monarch Lumber Company of Oregon. The David Investment Company was a *bona fide* creditor of the Monarch Lumber Company of Oregon to the amount of about $57,000. Every dollar represented by the face of the notes was received by the Monarch Lumber Company of Oregon, because it received $263,473.06 in cash and was credited with $36,526.94 on its indebtedness to the David Investment Company. These notes and the mortgage were executed for the purpose of obtaining funds with which to pay creditors and not for the purpose of defrauding them. The money received on these notes was in fact used to pay the then existing indebtedness and so far as disclosed by the record every creditor was paid in full with the single exception of the David Investment Company. The indebtedness represented by the notes and mortgage is free from fraud, illegality or taint unless it can be said that they are infected with usury.

2. The notes and mortgage are assailed, particularly by Bjelik, on the ground that they are usurious. However, we do not deem it necessary in this suit to determine whether the Assets Realization Company was a usurer. The notes and mortgage either are or they are not usurious papers. If they are not usurious then the Assets Realization Company holds a prior lien on Tracts A and B because Bjelik, the plaintiff and Patton are subsequent judgment creditors. If on the other hand the notes and mortgage are usurious, nevertheless they are superior to the subsequent judgments for the reason that usury neither discharges the debtor from the payment of the debt nor releases the land from the lien of the mortgage.

The statute which prohibits usury also fixes the penalty to be imposed upon the usurer. Section 6030, L. O. L., reads thus:

"If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money, property, or other valuable thing, or that any gift or donation of money, property, or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for him, directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned or for debts due, or to become due a rate of interest greater than that specified by the provisions of this chapter, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the school fund of the county where such suit is brought. The court in which such suit is prosecuted shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, against the defendant and in favor of the state of Oregon, for the use of the common school fund of said county, and against the plaintiff for costs of suit, whether such suit be contested or not."

It will be observed that the statute does not cancel the debt. The debtor is not relieved from liability to pay, although the amount which he may be obliged to pay is reduced to the original sum loaned without interest. The debtor is compelled to pay by force of a judgment against him and in favor of the State of Oregon for the use of the common school fund of the county. The very circumstance that a judgment is provided for of itself necessarily implies that the debt is not canceled. The mortgage secures and is incident to the debt and consequently when the debt is forfeited to the state the forfeiture carries the mortgage with the debt: *Chapman* v. *State,* 5 Or. 432, 436. No payments have been made on any of the notes except interest to September, 1912, and hence the maker of the notes is still a debtor. If the con-

tracts are not usurious, the lien of the mortgage gives the holder of the notes the right to be paid $300,000 with interest from September, 1912, before payment of the subsequent judgments; and even though the notes are tainted with usury the mortgage nevertheless gives the amount secured by it priority over the subsequent judgments. The debtor cannot be freed from liability; nor can the mortgage be canceled so as to reduce the notes to the rank of unsecured claims; and hence for the purposes of this suit it is immaterial whether the notes are or are not usurious and for that reason we do not attempt to determine whether the statute against usury has been violated.

3. The object of this suit is to annul the deeds and bills of sale conveying the assets of the Monarch Lumber Company of Oregon and to defeat or to reduce the amount and rank of the notes and mortgage. Neither the Assets Realization Company of Oregon nor Crawford seeks a foreclosure of the mortgage. The holder of the notes, the trustee and the lumber companies merely ask for a dismissal of the suit. This is not such a suit as is contemplated by Section 6030, L. O. L., and since that section of the Code is the measure of the power of the court a judgment could not be entered in this suit in favor of the state even though it be assumed that the notes are tainted with usury: See *Sujette* v. *Wilson,* 13 Or. 514, 521 (11 Pac. 267); *Holladay* v. *Holladay,* 13 Or. 523, 530 (11 Pac. 260, 12 Pac. 821). Nor do the judgment creditors contend that a judgment on the notes can be entered in this suit, although they do insist that the contracts are usurious. However, we do not now express or intimate any opinion concerning the quality of the notes. The character of the paper can be ascertained

whenever a suit described by Section 6030, L. O. L., is brought by some party.

4. The plaintiff avers that the deeds and bill of sale to the Monarch Lumber Company of Maine were executed pursuant to a conspiracy to prefer the Assets Realization Company and to defraud the other creditors. This accusation makes it necessary to relate the story of the deeds and bill of sale. The conveyances were the fruits of a plan for the reorganization of the affairs of the Monarch Lumber Company of Oregon; and while the plan itself was conceived in honesty it may possibly be true that its execution was corrupted by questionable motives. When the Monarch Lumber Company of Oregon received $263,473.06 in cash on September 27, 1911, it paid all its creditors, except the David Investment Company, and resumed the operation of its sawmill. The mill was run until February, 1913, when it was closed down on account of the financial condition of the company. A large floating indebtedness had again been incurred and the Lumber Company found itself owing approximately $200,000 besides the indebtedness on the notes. Interest had not been paid on the notes since September, 1912, and the principal was overdue. The Assets Realization Company was pressing the Monarch Lumber Company of Oregon for the payment of the notes and was threatening foreclosure. Funds were needed to pay premiums on insurance and taxes were unpaid. In this situation a reorganization plan was devised. The Monarch Lumber Company of Maine had been organized in 1912 and the amount of its capital stock placed at $6,000,000. Even as early as 1912 the Monarch Lumber Company of Oregon was known to be drifting towards financial troubles. At that time Lester W. David and another person had an op-

tion on a large body of timber. David planned the organization of the Maine company with the purpose of transferring the option on the timber to the Monarch Lumber Company of Maine so that it could issue bonds on the faith of the property conveyed to it and use the proceeds to pay for the timber lands and also to pay the creditors of the Monarch Lumber Company of Oregon. This plan was never consummated; the option was not transferred; stock in the Maine company was not issued; and no bonds were sold. However, the Maine corporation was still available in 1913 when a second organization plan was conceived. The second plan contemplated that all the assets of the Monarch Lumber Company of Oregon would be transferred, subject to the $300,000 mortgage, to the Monarch Lumber Company of Maine for shares of stock to be issued by the Maine company in payment for the assets received by it, and that the stock so issued would then be sold and the proceeds used to pay the creditors of the Monarch Lumber Company of Oregon. The stockholders of the Oregon company held a meeting on March 26, 1913, and authorized the transfer of its assets for $750,000 of preferred stock to the Maine company. On the same day the board of directors of the Oregon company authorized its president to enter into an agreement which was afterwards made with the creditors of the company. This agreement is dated April 1, 1913, and is signed by creditors holding claims which aggregate $190,187.57. By the terms of the agreement the creditors consent to a transfer of the assets of the Oregon company to the Maine company upon condition that the $750,000 of preferred stock to be issued by the Maine company to the Oregon company is by the latter company indorsed in blank and

deposited with a trustee named by the creditors with the understanding that Lester W. David would on or before August 1, 1913, sell "enough of such stock deposited with said trustee to pay in full the claims" of the creditors. It may be added in passing, however, that neither the plaintiff nor Bjelik nor Patton signed this agreement. The board of directors of the Monarch Lumber Company of Maine held a meeting on June 24, 1913, and formally accepted the offer of the Oregon company to convey its assets for $750,000 of the preferred stock of the Maine company, the stock to be delivered to the nominee of the Oregon company. The Monarch Lumber Company of Oregon conveyed all its property by executing the two deeds and bill of sale to the Monarch Lumber Company of Maine and the latter company issued $750,000 of its preferred stock and delivered it to a committee named by the creditors. The Maine company never at any time owned any property except the property received by it from the Oregon company. None of the stock turned over to the creditors committee was ever sold. The Assets Realization Company had been insisting upon the payment of the notes. On July 30, 1913, the very day when the deed to the Oregon Slough property and the bill of sale were executed by the Oregon company, the board of directors of the Monarch Lumber Company of Maine held a meeting and adopted a resolution authorizing the conveyance by warranty deed of all the mortgaged property to Ira M. Cobe "in full payment, release and discharge" of the notes and mortgage. The Assets Realization Company asserts that it refused to accept a conveyance of the property as payment of the indebtedness and it claims that the deed and bill of sale to Cobe dated September 4, 1913, and recorded September 6, 1913,

87 Or.—25

the day upon which the deed made by the Oregon
company conveying the Kenton property was recorded,
were made and received as further security for the
notes held by it and to enable it to dispose of the per-
sonal property.    Although we do not find it necessary
to decide whether the conveyances to Cobe constituted
an attempt to discharge the indebtedness and to trans-
fer title to him for the benefit of the Assets Realiza-
tion Company, we do, however, call attention to the
fact that there is evidence in the record about an
agreement to reconvey to the Maine company for
$332,000, interest and expenses; and it will be noticed
that this sum exceeds the amount that would be due
by the terms of the notes.    None of the stock delivered
to the creditors committee was ever sold.    No attempt
was made by Lester W. David to sell any of the stock;
and, indeed, any attempt to sell stock would have been
futile because when the Maine company deeded to
Cobe it was, so far as shown by the records, left with-
out any assets.    It is conceded that no consideration
was paid to the Maine company for the deed and bill
of sale delivered by that company.    The consideration
for the deeds and bill of sale executed by the Oregon
company failed completely.    The Assets Realization
Company had knowledge of the circumstances and
purpose of the conveyances to the Maine company.
The deed and bill of sale to Cobe were made not only
without authorization but also in direct violation of
the only resolution that had been adopted by the Maine
company.    The Assets Realization Company does not
assert ownership by virtue of the instruments made by
the Maine company.    Moreover, in their brief the ap-
pellants, when referring to the deeds from the Oregon
company and the one from the Maine company, ex-
pressly admit that "all parties concede that they are

not valid'' as deeds.   Neither the Monarch Lumber
Company of Oregon nor its creditors consented to the
transfers to Cobe.   The conveyances to the Maine
company, to Cobe, and to Murphy were properly an-
nulled by the decree appealed from.

5. The final question for consideration arises out of
the appointment of a receiver.   The Assets Realiza-
tion Company argues that either the mortgagee or its
alienee was in possession of the property when the
receiver was appointed and that the court could not
oust the mortgagee or its alienee by the process of
appointing a receiver.   The Assets Realization Com-
pany through its trustee Cobe took charge of all the
property immediately upon the delivery of the deed
and bill of sale recorded on September 6, 1913.   Cobe
and his successor Murphy rented some of the prop-
erty and from time to time sold lumber and other
personalty and used the proceeds to pay the expenses
incurred in caring for the property.   The   third
amended complaint was filed in this suit in November,
1915, and the decree of the Circuit Court was not ren-
dered until May 2, 1917.   Bjelik filed a motion on
January 3, 1917, and Patton presented a motion on
January 17, 1917, asking for the appointment of a re-
ceiver.   The motions were supported by affidavits and
the court appointed a receiver on January 23, 1917.
Among the findings made by the trial court and upon
which the final decree was rendered are the following:

"This court now finds it to be true that after the
trial and submission of this cause, and while the same
was under consideration by this court, the defendants
Cobe, Murphy and Assets Realization Company by an
instrument in writing executed and entered into by
and between said parties and said Lester W. David,
sold and transferred all their right, title and interest
in and to all of said property, unto said David, at the

agreed purchase price of $180,000, of which amount the sum of $5,000 was in full payment for said personal property, and the balance $175,000, was in full payment of the purchase price of said real property, to be paid as follows: $30,000 in cash upon execution of said instrument, and $25,000 yearly thereafter on August 1, 1917, to 1920, inclusive, and $50,000 on August 1, 1921, with interest on deferred payments at 6 per cent. And as an incident to said sale of said property said Assets Realization Co., agreed to have defendant Crawford, its trustee, release said mortgage, or to assign, transfer or set over said trust deed, and the notes secured thereby, to said David at his option; and further therein agreed to and did turn over and deliver possession of all of said property to said David, as the purchaser thereof. That prior thereto said David had caused the Monarch Mills, a corporation, to be organized under the laws of the State of Oregon, with a capital stock of $750,000 for the sole and exclusive purpose of selling and transferring to said corporation all of his right, title and interest, and his possession in and to all of said property under his said contract of purchase, as herein found; all of which was done. That said David was and is the vice-president of said Monarch Mills, a corporation, and owns $440,000 of its capital stock, and is its controlling and dominating factor.

"The court further finds that thereupon said Monarch Mills entered into possession of said property, claiming to be the owner thereof, and thereafter exercised acts of ownership therein, and did thereafter operate said electric power plant situate on said property, and did lease the two mills thereon situate to various parties, and did erect and make certain improvements thereon.

"*The court finds that the Assets Realization Co. was not in possession of said property as mortgagee:* that said Crawford was not in possession of said property as trustee under said instrument, and that neither said Cobe nor Murphy were in possession of said property as agents of said mortgagee or trustee, *but that at said*

*time said Monarch Mills,* a corporation, was in possession thereof, as the reputed and assumed owner of said property under its said contract of purchase.''

If it be assumed, however, for the purpose of this case that the mortgagee was rightfully in possession when the court appointed a receiver or if it be assumed that the deed and bill of sale to Cobe rightfully transferred possession to the mortgagee and that the subsequent possession of the Monarch Mills was the possession of the alienee of the mortgagee, nevertheless the appointment of a receiver was warranted. It may be conceded that the general rule is that a mortgagee rightfully in possession of mortgaged property cannot be ousted by the appointment of a receiver at the instance of the mortgagor or one claiming under the mortgagor without first paying or tendering the amount due on the mortgage debt; but this rule like most general rules has its exceptions. If the mortgagee is committing waste and is insolvent, equitable relief may be necessary: *Brundage* v. *Home Sav. & Loan Assn.,* 11 Wash. 277 (39 Pac. 666) ; *Bolles* v. *Duff,* 35 How. Pr. (N. Y.) 481.

Attached to the bill of sale signed by the Monarch Lumber Company of Oregon on July 30, 1913, is an inventory showing the value of its assets. The total assets are appraised in the inventory at $1,078,063.50; the property accounts are fixed at $778,593.96 and the buildings and machinery are listed at $755,835.15. Under date of February 1, 1912, the Assets Realization Company prepared and sent to its customers, to induce them to purchase the notes acquired in September, 1911, a circular which among other things declares that the financial statement of the Oregon Company ''as of November 1, 1911'' shows the mill-site, sawmill, plants complete and equipment and the

Kenton property to be worth $815,396.63; and that "our timber expert states that the sawmill property, equipment and real estate are worth $375,000 at quick sale and that the entire property of the company could be disposed of within 60 days for $500,000." At the trial in June, 1916, Lester W. David testified that in his opinion the mill property was not reasonably worth more than $175,000 at that time. The Monarch Lumber Company of Oregon is hopelessly insolvent; the Monarch Lumber Company of Maine has no property and exists in name only; prior to June, 1916, the Assets Realization Company had met with financial reverses, its Chicago office was closed, and its affairs were placed in the hands of a creditors committee; Lester W. David "had to go through bankruptcy"; it is a fair inference to say that the plight of the David Investment Company was neither. better than its owner, Lester W. David, nor than the concern owned by it, the Monarch Lumber Company of Oregon. If the Monarch Mills is to be considered as an alienee of the mortgagee and that it was rightfully in possession of the property, then it is plain, from the record presented on this appeal, that it does not measure up to the financial standard which is necessary to enable it to retain possession.

In brief, the properties shrunk from $778,593.96, their appraised value when the Assets Realization Company entered into possession on September 6, 1913, to $175,000 when the receiver was appointed; the Assets Realization Company had had possession of the property for more than three years and notwithstanding the fact that the monthly expense incurred in caring for the property exceeded the receipts from sales and rentals no attempt was made to foreclose the notes and mortgage; in the language of Jacob Levin

the Assets Realization Company "failed"; the mortgaged property was rapidly diminishing in substance and in value to the detriment of both the mortgagee and the judgment creditors. The facts warranted the appointment of a receiver. However, the appointment of the receiver should in no wise interfere with the foreclosure of the notes and mortgage; and whenever the holder of the notes desires to sue permission to do so should be promptly granted and the quality and amount of the indebtedness can then be determined, the mortgaged property sold and the proceeds of sale distributed. The conclusions herein expressed lead to an affirmation of the decree.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.

Denied February 13, 1918.

PETITION FOR REHEARING.

(170 Pac. 717.)

On petition for rehearing. Denied.

*Messrs. Teal, Minor & Winfree* and *Messrs. Wilson, Neal & Rossman,* for the petition.

*Mr. Hugh Montgomery, Messrs. Platt & Platt, Mr. J. W. Kaste* and *Mr. Maurice W. Seitz, contra.*

MR. JUSTICE HARRIS, delivered the opinion of the court.

The appellants have filed a petition in which they present at some length their contention that error was

committed in approving the appointment of a receiver. The petition presents no new argument; and, therefore, it is not necessary to restate the evidence or the contention of the parties. It is enough to say that, realizing the importance of the litigation, we have again examined the evidence and come to the same conclusion that was reached in the original opinion. The petition for a rehearing is denied.

REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON, and MR. JUSTICE BURNETT concur.