BROWN v. CRAWFORD et al.

CRAWFORD et al. v. KASTE et al.

(District Court, D. Oregon. November 25, 1918.)

Nos. 7426, 8015.

1. COURTS ⬨497—JURISDICTION—COMITY.
   Where a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts, though of concurrent jurisdiction, and they have no power to render judgment disturbing the possession of the property while in custody of the court which seized it.

2. COURTS ⬨493(3)—JURISDICTION—COMITY.
   Where the controversy is not the same—that is, where the issues in one suit are different from those in another, etc.—there can be no infringement of jurisdiction, as between the courts, in obtaining cognizance of the cases, though the court first obtaining possssession of the res is entitled to retain the same for purpose of disposition, etc.

3. COURTS ⬨493(3)—JURISDICTION—COMITY.
   Though a state court had taken possession of the property of an insolvent corporation which was subject to mortgages, by appointing a receiver, held that the federal court had jurisdiction of a suit to foreclose the mortgages, the two tribunals being concurrent, and the foreclosure proceedings not necessarily disturbing the state court's possession of the property.

4. BANKRUPTCY ⬨20(2)—TRUSTEE—AUTHORITY OF.
   Where the state court appointed a receiver to take possession of the property of an insolvent corporation, held, bankruptcy proceedings having subsequently been begun, that the trustee in bankruptcy is entitled to possession of the property in preference to the receiver.

5. BANKRUPTCY ⬨20(2)—TRUSTEE—RIGHTFUL POSSESSION.
   Where a receiver had been appointed by the state court to take possession of the property of an insolvent corporation, and one who had acquired the equity of redemption of land which the corporation had mortgaged agreed that, if a receiver was appointed, such equity would

---

⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be subordinated to the protection of the unsecured creditors, *held* that the subsequently appointed trustee in bankruptcy, who represents the unsecured creditors, might execute the trust.

6. BANKRUPTCY ⬅️288(1)—TRUSTEE—TAKING POSSESSION OF PROPERTY IN HANDS OF A RECEIVER APPOINTED BY STATE COURT.

Where trustee in bankruptcy, under order of referee, took possession of property of the bankrupt in the hands of a receiver appointed by the state court, *held* that possession was taken by summary process, which is not in accordance with the comity existing between state and national courts.

In Equity. Suit by William W. Crawford, trustee, and another, against John W. Kaste, consolidated with a suit by Russell H. Brown, as trustee in bankruptcy of the Monarch Lumber Company, a bankrupt, against William W. Crawford, trustee, and others. Decree of foreclosure, with directions.

See, also, 252 Fed. 248.

Ralph A. Coan, of Portland, Or., for Brown.

O. A. Neal, of Portland, Or. (Wirt Minor, of Portland, Or., of counsel), for Crawford and Assets Realization Co.

Carey & Kerr and C. A. Sheppard, all of Portland, Or., for David Inv. Co.

Martin L. Pipes, of Portland, Or., and Dey, Hampson & Nelson, of Portland, Or., for Kaste.

Platt & Platt and Hugh Montgomery, all of Portland, Or., for Brayton & Lawbaugh.

Maurice W. Seitz, of Portland, Or., for Moody.

WOLVERTON, District Judge. This is a suit to foreclose a mortgage and to subject the property covered thereby to the payment of the mortgage obligations. Previously to this a suit was instituted by Russell H. Brown, trustee in bankruptcy of the estate of Monarch Lumber Company of Oregon, against the Assets Realization Company and William W. Crawford, for an accounting touching the property supposed to have been covered by the mortgage. A cross-bill was filed by the David Investment Company, claiming that as guarantor it had paid certain installments of interest on the mortgage obligations, and seeking subrogation for a recovery of the sums paid. The mortgage was set up in all its features. Brayton & Lawbaugh, and Moody, the successor to Bjelik, controverted the legality of the execution of the mortgage, charging that it was usurious, and that recovery thereon should be reduced to less than the face value of the obligations. After hearing, a decision was rendered sustaining the mortgage and settling the account as prayed for by the trustee in bankruptcy. Later, by leave of court, the defendants Assets Realization Company and William W. Crawford, trustee, filed a cross-bill setting up the mortgage and praying foreclosure, and the issues on the pleadings have been subsequently completed. These two causes were consolidated for trial. The former case has been largely lost sight of on the present hearing, and the trial has proceeded in the main upon the direct foreclosure proceeding as above entitled.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendants Brayton & Lawbaugh and J. D. Moody set up their judgments, which it is claimed are liens against the mortgaged property, and again insist that the mortgage is usurious.

The David Investment Company by its answer again claims that it is entitled to subrogation for interest paid on the principal obligations.

The defendant Kaste answers that he is the owner of the legal title covered by the mortgage; that in a certain cause pending in the circuit court of the state of Oregon for Multnomah county, entitled Brayton & Lawbaugh v. The Monarch Lumber Company et al., upon condition that the state court appoint a receiver of the mill property covered by the mortgage, he subordinated his title for the benefit of the general creditors, he to retain the legal title when they were paid; that a receiver was accordingly appointed, who, through a writ of assistance, was put into possession of the property, and is now entitled to such possession, although the same was wrongfully taken from him by Russell H. Brown as receiver in bankruptcy, but who now retains the same as trustee; that by reason thereof this court is without jurisdiction of the subject-matter to entertain cognizance of the foreclosure suit.

Russell H. Brown, trustee, for answer relies upon his right of possession of the property, with a view to administering it for the benefit of the general creditors.

[1-3] The question of prime importance is one of jurisdiction. It is insistently urged that the federal court is without jurisdiction to entertain the present suit to foreclose the Monarch Lumber Company mortgage. The basis of the proposition is that the state court is entitled to the possession of the res, and, being so entitled, no suit or action will lie in any other court, whether federal or state, with respect thereto.

Let it be conceded for the present that the state court, by the rules of comity, is entitled to such possession; or we may go further, and let it be admitted that such court has the actual possession, and is holding it in accordance with such rules of comity. I am persuaded that in either aspect the position of counsel is unsound. Reference will later be made to the state of the record. The Supreme Court, in a comparatively recent case, has laid down the broad rule applicable in the following language:

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, for both the state and federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case." McClellan v. Carland, 217 U. S. 268, 282, 30 Sup. Ct. 501, 505 (54 L. Ed. 762).

And in an earlier case, Gordon v. Gilfoil, 99 U. S. 168, 178 (25 L. Ed. 383), the court observes:

"It has been frequently held that the pendency of a suit in a state court is no ground even for a plea in abatement to a suit upon the same matter in a federal court."

The proposition is very well illustrated by the case of Mercantile Trust Co. v. Lamoille Val. R. Co., 17 Fed. Cas. 25, No. 9432. The plaintiff in that case, being the owner and holder of certain railroad mortgage bonds, instituted a suit, in behalf of itself and other like owners and holders, to foreclose the mortgage and for removal of trustees who were seeking to foreclose an alleged preference mortgage upon the same property in the state court, one of whom had been appointed receiver in that court, and was at the time in possession of such property. The court stated the question for its decision not to be whether it would grant relief that would disturb the state court, for "surely," it was declared, "it will not do that," but whether it would hear and determine any question or grant any relief concerning the right to the property, and not extending to possession, while the state court had possession. The question is the direct one involved here. Answering it, the court says:

"There is nothing, either in the letter or the spirit of the statute, that prohibits a party having a question of right, or a claim to relief, that can be determined without meddling with the possession of any court, from having the question determined or the relief granted by any court of competent jurisdiction for the purpose. Neither is there anything in the nature of things which should prevent."

After referring to the case of Watson v. Jones, 13 Wall. 679, 20 L. Ed. 666, the court goes on to say:

"In this case, as in that, some of the relief which the bill might cover would interfere with the possession of the state court, and some of it would not. The execution of an order of sale, under the provisions of the mortgage, or of an order for the delivery of possession, under other provisions, would have that direct effect, and, perhaps, the general prayer for relief would cover either; but, as before mentioned, it is clear that the plaintiff cannot have such relief. None can be had except that which will not interfere with the present possession. A decree of foreclosure would not. It would only cut off the equity of redemption of the plaintiff's bonds, which the mortgagors now have, and would not affect the possession at all, but only the right. * * *

"The objection on account of the receivership cannot prevail to prevent proceeding in this cause, so far as it can go without interfering with the receivership; and a decree of foreclosure can be had, if the plaintiff is otherwise entitled to one, without involving such interference."

The principle relied upon by counsel as inimical to the jurisdiction of this court of the subject-matter is one well settled and not to be controverted; but it is wholly without application here. It is, as stated in Wabash Railroad Co. v. Adelbert College, 208 U. S. 38, 54, 28 Sup. Ct. 182, 187 (52 L. Ed. 379), that:

"When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it."

The principle is applied in Palmer v. Texas, 212 U. S. 118, 125, 29 Sup. Ct. 230, 232 (53 L. Ed. 435), the court saying:

"If the state court had acquired jurisdiction over the property by the proceedings for the appointment of its receiver, and had not lost the same by the subsequent proceedings, then, upon well-settled principles, often recognized

and enforced in this court, there should be no interference with the action of the state courts while thus exercising its authorized jurisdiction."

Counsel confuses jurisdiction over the subject-matter for entertaining a cause respecting it and jurisdiction of the res by possession with power of disposal within the purview of the cause brought upon the record. Eliminating the idea of possession, the state and the federal court, though exercising concurrent jurisdiction, may proceed at one and the same time, though the parties be the same and the subject-matter and the cause the same; but, of course, only one relief can be had in the end. Comity, indeed, forbids any unseemly conflict between such courts for possession of the res involved, but does not prevent a pursuit of the same right in both courts where such conflict does not arise. While possession gives jurisdiction over the res, it does not control jurisdiction as to the subject-matter. Another court will respect possession, but it is at liberty to entertain another cause concerning the same subject-matter, so long as it does not oust the court first acquiring possession of the res, or interfere with its disposal of the same in the manner appropriate to the cause there entertained. The distinction is not new, and is well recognized: Logan v. Greenlaw (C. C.) 12 Fed. 10; In re Hall & Stilson Co. (C. C.) 73 Fed. 527.

Another application of the principle is that, where the controversy is not the same—that is, where the issues in one suit are different from those involved in another, and the subject-matter is not identical—there can be no infringement of jurisdiction as between the courts maintaining cognizance of the cases. But in such cases the first acquisition of the possession of the res dominates the right to retain the same for the purpose of disposition appropriate to the cause pending. Knudsen v. First Trust & Savings Bank, 245 Fed. 81, 85, 157 C. C. A. 377, and cases cited.

The controversy here is by no means the same as that presented in the state court. The issues are not the same, nor is the subject-matter identical or of like nature. So it is clear that the pendency of the cause in the state court stands in no way as an impediment to this court's entertaining jurisdiction of the present cause, and the objection that this court is without jurisdiction of the subject-matter cannot be maintained. The state Supreme Court voiced its realization of the propriety of the institution of a separate suit when it said, in the Brayton & Lawbaugh Case, that "the appointment of the receiver should in no wise interfere with the foreclosure of the notes and mortgage"; which statement it deemed opportune to accompany with the admonition that, "whenever the holder of the notes desires to sue, permission to do so should be promptly granted." 87 Or. 365, 391, 169 Pac. 528, 536.

[4] The immediate question is whether this court should exercise jurisdiction to retain possession of the res for application to the purposes of the suit. It is admitted that the real property subject to the mortgage is now in the possession of the trustee in bankruptcy, who is a party defendant here, but it is contended that the state court receiver is rightfully entitled to the possession. Let us inquire about that.

On November 18, 1914, Brayton & Lawbaugh instituted a suit in the circuit court of the state of Oregon for Multnomah county against

the Monarch Lumber Company of Oregon, Monarch Lumber Company of Maine, Assets Realization Company, Ira M. Cobe, and William W. Crawford, individually and as trustee. Plaintiff claimed to be the owner of a judgment rendered against the Monarch Lumber Company of Oregon on December 8, 1913, with a lien on the premises covered by the present mortgage, acquired by attachment dating from August 13, 1913. The purpose of the suit was to set aside certain conveyances of the real property and a bill of sale for the personal property; also to reduce the amount of the mortgage and to subject the property to the payment of its judgment. The insolvency of the Monarch Lumber Company of Oregon was specifically alleged. This complaint was, on December 14, 1914, amended by adding E. W. Spencer, W. T. Patton, John Bjelik, and A. C. Springer as parties defendant. As amended, it contained the same general allegations as to the insolvency of the Monarch Lumber Company, and demanded the same general relief. On February 4, 1915, a second amended complaint was filed adding as party defendant T. M. Hurlburt, sheriff of Multnomah county, but with like allegations as to insolvency of the Monarch Lumber Company of Oregon, and like prayer for relief. Still later, on November 13, 1915, a third amended complaint was filed. This purports to be in behalf of the plaintiff and other creditors of the Monarch Lumber Company of Oregon similarly situated, and contains the same general allegations of insolvency, but prays an accounting and general relief.

On January 3, 1917, W. T. Patton, appearing by his attorney, J. W. Kaste, filed a motion for the appointment of a receiver, assigning as a reason therefor, among others, that the Monarch Lumber Company is an insolvent corporation, has ceased to do business for the past three years, is defunct, and has no officer now within the state, and has forfeited its corporate rights. In pursuance of this motion, Felix W. Isherwood was appointed receiver of "all and singular the property, real, personal, and mixed, heretofore owned and operated by the Monarch Lumber Company."

When it came to the final disposition of the case, the court, among other things, found as its conclusion of law:

"That said receiver herein appointed should by the decree of this court be continued until the further order of this court, with the duty and powers in him vested to administer upon said estate of said defunct corporation, to wind up its affairs, and to settle the claims, and to dispose of its property for that purpose, under the orders and directions of this court."

When the case got to the Supreme Court, that court based its approval of the appointment of the receiver upon the ground that the Monarch Lumber Company was an insolvent concern. Brayton & Lawbaugh v. Monarch Lumber Co., 87 Or. 365, 169 Pac. 528, 536, 170 Pac. 717.

So that, in consideration of this record, it can scarcely be further controverted that Isherwood was appointed receiver of an insolvent corporation, with a view to winding out its affairs and disposing of its property subject to the orders of the court. In such a case there can be not doubt, as the court decided in the matter of the Monarch Lumber Company, a bankrupt, that the trustee in bankruptcy had the lawful right to the possession of the property of the Monarch Lumber

Company in preference to the receiver in the state court. Such is the settled law upon the subject.

[5] The next phase of the case relates to the ownership of the property, namely, the real estate which is covered by the mortgage, at the time of the appointment of the trustee in bankruptcy. It is settled by the judgment of the Supreme Court that Patton was the owner of the equity of redemption of the real property at the time of the appointment of the receiver. Shortly after the receiver had been appointed in the state court, to wit, on February 2, 1917, Patton deeded the premises to Kaste, and Kaste is now the owner of Patton's interest therein. The consideration for the transfer was $800. Of this $705 was paid from contributions made by one or more of the general creditors, and the balance by Kaste himself. Kaste was unwilling to purchase the title without the assistance of the general creditors, and the arrangement was accordingly made whereby the general creditors should participate in the proceeds to be derived from the property before the receiver was appointed. This resulted in a proposition by Kaste, he at the time representing Patton, made in open court, to the effect that, if the court would appoint a receiver in that cause, Patton would subordinate his title in and to tract "A" for the benefit and protection of the unsecured creditors of the said Monarch Lumber Company; and the appointment was accordingly made by the court. Kaste has explained that it was his intent and purpose to retain the legal title after the unsecured creditors had been satisfied, and such is the effect of the transaction in appointing the receiver. Tract "B" was not subjected to the condition, and Patton continued to hold the title thereto unaffected by any subordination to the claims of the unsecured creditors.

The testimony here further shows that on January 29, 1917, Isherwood was, through the aid of a writ of assistance issued out of the circuit court, put into the possession of the property, both tract "A" and tract "B." After he had been in possession for the space of an hour, possibly longer, Russell H. Brown, the receiver in bankruptcy of the Monarch Lumber Company, appeared and demanded possession, producing his authority from the referee in bankruptcy for so doing. Isherwood, unwilling to resist an officer of the court, yielded to the demand, but did so under protest, and Brown assumed possession. Brown subsequently was appointed trustee, and now holds the property as such.

The question arises what interest the trustee in bankruptcy has in tract "A," and whether he is entitled to administer it for the benefit of the unsecured creditors. I am persuaded that he has a direct interest, as trustee of the property, by reason of the fact that it was subordinated both by the act of Patton and by the order of the court for the benefit of the unsecured creditors of the Monarch Lumber Company of Oregon, and with their co-operation and assent. The trustee represents the creditors of that concern by operation of law, and as such is competent to administer the property for their benefit. While it is true that the title to the property passed from the Monarch Lumber Company, the subordination restored it for the benefit of these creditors, whereby they were accorded a lien for the protection of their

claims. The trustee representing the creditors, there would seem to be no good reason why he may not execute the trust, and subject the property to the payment of such claims. The residue, of course, would go to Kaste.

[6] But, however, this may be, the possession was taken from the state receiver by summary process. This, I am convinced, is not in accord with the suggestion of comity existing between state and national courts, and, if persisted in, would lead to unseemly conflict between such courts respecting the possession of property. In re Watts and Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; In re Lengert Wagon Co. (D. C.) 110 Fed. 927, 928; Carling v. Seymour Lumber Co., 113 Fed. 483, 51 C. C. A. 1; In re Rathman, 183 Fed. 913, 106 C. C. A. 253.

The question respecting usury attending the execution of the Monarch Lumber Company of Oregon mortgage was settled in the suit for an accounting, and need not be further attended to or discussed here.

So, also, at the former trial it was determined that the plaintiffs were entitled to recoup for premiums paid for fire protection, and for taxes, expenses of watchmen, and necessary repairs to prevent dissipation of the property, the sum of $50,000. That amount, as nearly as could be ascertained, covered the whole of such expense and outlay up to the time of that trial. At least, I am unable to say that a larger sum is subject to recoupment under sections 6, 7, 10, and 12 of article 2 of the mortgage, so as to entitle the plaintiffs to a lien within these provisions; but I hold that they are entitled to such lien covering that sum.

Further expenditures were incurred by Lester W. David subsequent to the former trial, and while it is claimed he was in possession of the property, to the amount of $12,780.84, which it is sought to have declared a lien under the mortgage for like reasons as the above sum of $50,000 was so adjusted. David, however, entered into a contract with the trustee in bankruptcy to keep up the property and maintain it in as good condition as he found it at the time, and to pay the insurance. This contract and undertaking on the part of David are fatal to the contention. The said sum of $12,780.84 is therefore not subject to such adjustment.

As conclusions of mixed fact and law, and without further analysis, I make the following findings:

The plaintiffs are entitled to recover the principal of the 12 notes. .$300,000 00
The interest from September 1, 1913, to this date, at 7% per annum,
    the David Investment Company having paid the first two years'
    interest ................................................ 109,900 00
Also money that the mortgagee was compelled to pay to keep down
    the taxes and insurance, and to preserve the property so that in-
    surance could be had, and prevent dissipation................. 50,000 00
Amount found to be reasonable as attorneys' fees for foreclosing
    the mortgage .............................................. 15,000 00

    Total ................................................$474,900 00

The David Investment Company is entitled to recover the amount it
    was compelled to pay on interest installments as guarantor....$37,500 00
And interest on such payments from date made at 7% per annum.. 16,182 25

    Total ................................................$53,682 25

Plaintiffs are entitled to a foreclosure of the mortgage, and the David Investment Company is entitled to subrogation for the amount of interest it was compelled to pay, and the accumulated interest thereon, as above indicated.

The property incumbered by the mortgage should be sold to satisfy these demands of plaintiffs and the David Investment Company, together with the costs of this suit, which are awarded to plaintiffs.

Whatever money or property may remain after the satisfaction of these demands should be applied in satisfaction:

First, of the judgment of J. D. Moody, including interest thereon from June 30, 1913, the date of its rendition, at 6 per cent. per annum.

Second, of the judgment of Brayton & Lawbaugh, including interest thereon from December 8, 1913, the date of its rendition, at 6 per cent. per annum. The lien of this judgment was acquired by attachment levied August 13, 1913, which gives the lien over the Patton judgment, and subordinates Kaste's title thereto. These judgment holders have not asked that they participate in the foreclosure, but it is only fair that they should participate in the funds arising from the mortgaged property according to their priorities.

Third, the general or unsecured creditors of the Monarch Lumber Company of Oregon are entitled to the payment of their claims out of any surplus that may yet remain of the proceeds of tract "A."

Fourth, John W. Kaste is entitled to any balance that shall remain, either of money or property, after all these demands are satisfied.

All the defendants, including Kaste, should be foreclosed of whatever right, title, or interest they or either of them have or hold in the property.

The property, however, should be at once returned to Felix W. Isherwood, the receiver in the state court, and order of sale under the decree of foreclosure should be stayed pending action in that court.

The trustee in bankruptcy is entitled to a like accounting as was awarded him upon the former trial.

The decree of foreclosure should remain open for such further provision to be made at the foot thereof as may hereafter seem meet and proper.

Let a decree be drawn and entered in conformity with this opinion and these findings.